Judge Marshall
delivered the Opinion of the Court.
This appeal is prosecuted by Lewis Myers and others, for the reversal of a judgment in ejectment, rendered against them, on the demise of the heirs of Robert Sanders.
'On the trial of the cause, the plaintiff exhibited a patent *507 to Robert Sanders, thé father of the lessors, for one thousand six hundred and sixteen acres of land, bearing date in 1786; and proved that the defendants, on whom the declaration and notice were served, were in possession of several tenements within its boundaries, at the time of the service.
The defence and', title of the defts..
Further evidence ■ on the part of-' pltfs. to repel the defence.
The defendants exhibited a patent to J. & J. Harris, of elder date, which covered the whole or a great part of the land in contest; but showed no connection with the title under that patent. They also read and relied on a sheriff’s deed, purporting to convey to John Norton, six hundred and sixteen acres of the land contained in the patent of Sanders, in virtue of a sale under an execution in favor of John Norton &c. against the lessors, on a bond executed by them to Norton, to secure payment for his improvements made, within the said patent, on land recovered from him by the lessors, in 1816 — also, a sheriff’s deed purporting to convey the same six hundred and sixteen acres of land to John Thomas, by virtue of a sale thereof, under an execution against Norton, on a replevy bond, which execution and sale thereon were subsequent to the sale and deed to Norton. And also, a deed from Thomas and wife,, conveying the same land to Lewis Myers, who was admitted to defend for and with the tenants in possession, several years after they, together with John Fowler,, had been made defendants, and had pleaded. The bonds and executions above referred to,, with the returns on the latter, were read, and form a part of this record; and it appears that the contest is confined to the six hundred and sixteen acres included in the said deeds, and within which the tenants sued held possession.
For the purpose of repelling these defences, the plaintiff attempted to establish by evidence: first — that the right of entry under the elder patent, had been tolled by twenty years possession adverse thereto, taken and held under the patent of Sanders. Second — that the sheriff’s sale and deed to’ Norton, were fraudulent by collusion between the sheriff and Norton. Third — that the land sold and conveyed to Norton, or some portion of it, was possessed adversely to the heirs of Sanders *508 ■when it was levied on and sold under the execution against them. And, fourth — that the tenants in possession — all of whom claimed under Myers — entered after, and under the sale to Norton.
Instructions.
Motion for a new trial.
The state of case which the pltfs. —having no title — must have established by proof, to entitle themselves to a verdict.
The instructions given, and those refused, relate to the three first of these points. No instruction was either given or asked which noticed the fact last stated, or gave any effect to the inference deducible from it, that the defendants acquired and held possession under the sale and deed to Norton.
The defendants moved for a new trial, on the ground that the verdict was against the evidence, and the law of the case, and that the Court had erred in giving and refusing instructions. The general question presented for the consideration of this Court, is whether that motion was properly overruled.
From the brief statement of the case which has been made, it is apparent that the lessors of the plaintiff had no title; and therefore, that the verdict for the plaintiff cannot be sustained, unless, upon the evidence before the jury, they were authorized to find:—
First — Such facts as rendered the sheriff’s deed to Norton wholly void, ab initio, and therefore inoperative to pass the title which it professes to pass; or such facts as showed that it was voidable in the beginning, and that the right of avoidance still existed, and might be asserted with effect in this action, and against the defendants therein. And, as neither the voidness nor the voidability of the deed, though satisfactorily established, could of itself have given the lessors of the plaintiff a right of entry upon the land, without showing, either such a relation between themselves and the defendants, as authorized an entry upon the possession of the latter, if the deed were void; or such title in themselves as authorized an entry upon the possession even of strangers, if the deed were out of the way; the evidence must also be such as that the jury might have found in the second place, either that the possession of the defendants was acquired and held under the deed, and therefore under the title of the lessors; or that there had been, before the commencement of this suit, and before the date of *509 the demise, a possession of twenty years, adverse to the patent of J. & J. Harris and under that of Sanders, whereby the right of entry under the elder patent had been tolled, and in effect transferred to the holders of the junior patent.
Instructions, by which conclusive effect is given to certain facts Hypothetically assumed , thereby excluding other-facts from the con sideration of the jury — cannot be sustained, unless the instructions are substantially correct, or unless the verdictis such as the jury were bound to find on the whole case.
If — supposing the deed to Norton never to have been made — the lessors have shown a right of entry, either on the ground of a previous possession of twenty years, whereby their title was made perfect, or on the ground that the present defendants acquired possession under their patent, and look to it for title and protection— then, if the deed to Norton be either void or voidable, and they have succeeded in showing a present right to avoid it, they have established a right of entry, notwithstanding the production of that deed.
It is not our purpose to detail or discuss the evidence upon these points. It certainly conduced to show, that the possession of the defendants was acquired and held under the deed to Norton. And as the jury might have found the fact to be so, or might have found such a previous possession under the patent of Saunders as would have given a right of entry under it — the verdict could not be regarded as contrary either to the evidence or the law, if the evidence authorized the further conclusion, either that the deed was absolutely void, ab initio, or that being voidable only, in the beginning, it was still voidable as against the present defendants.
But, as the case is now presented, the verdict does not stand simply upon the question of its conformity with the evidence and the law. If it did, we should have great, if not insuperable, difficulty in coming to the conclusion that it is not sqpported by both. But, as the verdict was rendered under instructions from the Court, which gave conclusive effect to certain facts therein hypothetically assumed, and thereby excluded other facts presented by the evidence, from the consideration of the jury, it cannot stand, though consistent with the evidence, unless the instructions referred to are in themselves substantially correct, or unless, upon consideration of all the evidence, the jury would have been bound to find for the plaintiff.
Grounds relied on by pltfs. to invalidate an execution sale and sheriff's deed.under which defendants claim: up - on which the prin oipal question arises.
In 1823, (i. e. previous to the act of 182S,) a sale under ox’on, of land held adversely to the deft, was unauthorized & void: the sheriff’s deed passed no title.
The voluntary deed of a party having right or authority to execute it, invariably passes the title, according to the tenor and effect of the deed and authority.— Fraud (not in the ex’on,but)in the consideration or inducement of a deed, never renders it absolutely and ipso facto void: tho’ the injured party may, for that cause , avoid it, if he will.
E. g. A deed made to defraud creditors — if the grantee did not knowingly coop, erate in the fraud' —is valid ; and even where the grantee did cooperate, his conveyance to an innocent purchaser, who had no participation in the fraud, passes an indefeasible title. This is not only a provision of the statute against fraudulent conveyances, but is a well established principle of the common law. So—
*510 The fundamental questions in the case, as already seen, were whether the lessors of the plaintiff had a right to invalidate the deed to Norton, and whether they had succeeded in doing so. The only grounds on which this was attempted were, first — that the land sold, or part of it, was held adversely to them when taken and sold under the execution against them. And, second — that, by fraudulent combination between the sheriff and Norton, who was the plaintiff in the execution and the purchaser at the sale, the sale was kept secret, and by this and other means, a fair competition prevented; whereby six hundred and sixteen acres of land, intrinsically worth five dollars an acre, were sold in the absence of the lessors, the defendants in the execution— for little more than one hundred dollars.
As to the first of these grounds, the Court instructed the' jury correctly — that, so far as the land was in adverse possession at the time, the sale (which took place in 1823) was void, and the deed passed no title. But as the evidence, so far from showing conclusively that the whole of the land was in adverse possession, conduced strongly to show that a part only, if any, was so held, it is clear, that the verdict for the whole land cannot be sustained on this ground.
With regard to the fraud relied on as rendering the deed inoperative to pass the title of the lessors, or to obstruct their recovery in this suit, the evidence conduces to prove it as above stated; and as it is evident, from the instructions of the Court, that the jury must have based their verdict upon the belief that it was sufficiently established by the proof, it may. be assumed as having been so established. On this subject, the Court instructed the jury that, if they believed the sale and deed to have been fraudulent in the manner above stated, the deed was void, and did not pass the title of the lessors.
In thus instructing the jury, we have no doubt the Court erred. The fraud assumed, existed in the consideration or inducement of the deed, and not in its execution; and although such a fraud may give’ the injured party a right to avoid the instrument, or to *511 defeat its effect, it did not render the deed ipso facto, and to all purposes, absolutely void and inoperative from the beginning.
Held, that where an ex’on was levied upon land, which was sold by the sheriff, who did not exceed his authority, but who,com bining with the pltf. in the ex’on, conducted the sale in a secret, fraudulent manner, and struck off the land to him, at a very inadequate price, and conveyed it to him — the deed was not void, but voidable only , and passed the title to the fraudulent purchaser. But— Tho’ the deed is not void, it may be avoided for the fraud in the sale, to effectuate which it was made, when it is ■ set up as a de-fence to an appropriate action, (e. g. an ejectment,) bro’t by the defrauded par ■ ty to recover the land.
*511 If this were the deed of the party whose title it professes to pass, the fraud, on the part of the purchaser, by which it was induced or procured, would not render it absolutely void, but voidable only. Mansel's Adm. vs. Israel, 3 Bibb, 515; Arnett vs. Cloudas, 4 Dana, 299. It would scarcely be contended that a secret fraud by an agent making a deed for his principal and in his name, would invalidate the deed in any respect, if made in pursuance of a valid authority and to a purchaser for a valuable consideration, who is innocent of the fraud. If the fraud of the agent who makes the deed, does not in such a case render the deed even voidable, and if the fraud of the grantee, in case of a direct deed from grantor to grantee, does not render the deed void, but only voidable, we do not percieve any principle on which the combination of the agent and the grantee, can render the deed ipso facto and absolutely void. It is believ'ed to he universally true, that a deed voluntarily executed by a party having right or authority to execute such a deed, passes the title of the grantor, according to the tenor of the deed and of the authority. The fraud of the grantee may give the grantor a right to reclaim the thing granted, whether it has been passed mediately or immediately from him. But if the deed itself be perfect, and made by the grantor, or in pursuance of his authority, it seems impossible that any fraudulent motive or intent, which is a matter wholly extraneous, can obstruct the passage of the title.
This position may be illustrated by the case of a deed made to defraud creditors. If the grantee of the debtor be innocent, that is, if he do not knowingly co-operate with the grantor in his fraudulent intent, he has a valid title, even against the defrauded creditors. And even if he concurs in the fraud, still the title passes, as is proved by the fact that if he convey to an innocent purchaser for a valuable consideration, such purchaser has a valid title against all the world. It may be said that these are the principles of the statute against conveyances of *512 this character, and not of the common law. But although the statute may have gone farther in its denunciation of fraud, than the adjudications previous to its passage (in the 13th year of Elizabeth) had gone, we have no evidence that it exceeds the common law in its regard for innocent purchasers. On the contrary, it has been said by high authority (Lord Mansfield, in Cadogan vs. Kennett, Cowper, 434,) and is^the prevalent doctrine of this day, that the statute of the 13th of Elizabeth does but carry out the principles of the common law as now understood. (See the opinions of Ch. J. Spencer and Judge Platt, in Anderson vs. Roberts, 18 Johns. R. 513.) Besides, the question whether the saving clause of the statute in behalf of bona fide purchasers, applies to the purchaser from the fraudulent debtor, or to the purchaser from the fraudulent grantee of the fraudulent debtor, is a question of construction, in the determination of which the principles of the common law had, of course, an important, if not a decisive effect. And the doctrine, now well settled, that the innocent purchaser from the fraudulent grantee of the fraudulent debtor has an indefeasible title — which could not be unless the title passed by the first deed, notwithstanding the fraud of both parties — tends to prove that, upon common law principles, the mere fraudulent intent of the parties to the deed does not prevent the passage of the title, if the fraud do not affect the very substance and execution of the deed itself.
How then is a sheriff’s deed affected by fraud in the sale, in consummation of which it is executed? If the sheriff should be considered as being invested with the title for the purpose of selling and conveying the land, (which we suppose not to' be the case,) it cannot be doubted that if he pursue his authority, the title would pass by his deed, whatever fraud may have been committed, either by himself alone, or by him in conjunction with the purchaser. If he should be considered as the agent of the debtor, his conveyance would stand on the same footing as that of a private agent, acting within the pale of his authority, but committing a fraud against his principal, with the co-operation of the grantee; and *513 in that case, the conveyance being authorized by the letter of his authority, would pass the title, though it might be subject to reclamation. But regarding him, not as the agent of the party, but as the agent of the law, authorized by the law, and in consequence of the neglect or laches of the debtor, to sell and convey the land of the debtor, upon certain conditions which limit the extent of his authority — the question is whether, in consequence of the fraud in the sale, as assumed in this case, his deed was totally inoperative to pass the title. The acts or omisions of the sheriff, which constitute the alleged fraud in the present case, do not involve a violation of those conditions by which the law has limited his authority, and upon compliance with which, it has given effect to his acts; but imply only a neglect of those acts which he is directed to perform, a.s preparatory to the sale, and for the purpose of securing the interests of the debtor, by a fair competition in the purchase of his property. It has often been decided, that the conduct of the sheriff alone, in relation to these preparatory acts, does not invalidate his authority, nor affect, in the slightest degree, his conveyance to a purchaser who is ignorant of his acts or omissions in' this respect. Haydon vs. Dunlap, 3 Bibb, 216; 2 Bibb, 202-401—518; 1 Mon. 95; 3 J. J. Marsh. 439; Sanders’ Heirs vs. Morton, 4 Mon. 465. And it seems clear that if the omission to perform the acts themselves, does not invalidate his authority, the intent with which they are omitted cannot.
It may be said that, if the sheriff omit any part of his duty for the purpose of defrauding the debtor whose interest the law commits to his charge, it is a fraud upon the law itself, and that the law ought not to give effect to any fraudulent act of its officer by which the debtor is injured. But the law looks not alone to the interest of the debtor whose property has fallen into the hands of its officer for the payment of his debts. It regards, also, the interest of the creditor, and of the purchaser, and of the community at large, which may consist of debtors, creditors and purchasers. And, considering that the permanent interests of each of these *514 classes, as a class, and the peace of the community at large, will be best promoted by giving security to judicial sales, made in pursuance of the authority of the officer, as found in the law, and the process in his hands, it does not admit of the doctrine that the fraud of the officer alone shall be a ground of invalidating his authority, or affecting the operativeness of his deed in passing title to the purchaser. The first consequence of such a doctrine would be, that the innocent purchaser at a sheriff’s sale, would acquire no title, if the sheriff had committed any fraud to the injury of the debtor. And a still more general consequence would be, that all con'fidence in the stability of titles acquired under such sales, would be destroyed, and the vendible value of the debtor’s property consequently depreciated, if such titles were subject to be defeated by charging, or establishing to the satisfaction of a jury, that the sheriff who made the sale, had been actuated by a fraudulent motive, in the omission of some act which the law directs him to -.perform, but of the omission or performance of which, purchasers are not bound to have knowledge. This doctrine is, as we think, fully refuted by the cases referred to on this subject, and by the policy of the law as therein declared.
If then, as we think is obvious, the authority of the sheriff is not to be invalidated by his fraudulent omission or commission of acts of which the omission or commission would not affect his authority if there were no fraudulent intent, and if, notwithstanding such fraudulent -omission or commission, his sale and conveyance pass the title of the debtor irrevocably to the innocent pur•■chaser — the question arises -whether the fraud of the purchaser, either separately, or in combination with the •sheriff, can either invalidate the express authority of the ■sheriff, or obstruct the passage of title by a deed which he voluntarily executes, and which the purchaser voluntarily recieves? It seems to be a necessary consequence of what has been said, that it can do neither; and we •are, therefore, of opinion that, notwithstanding the fraud alleged, the deed in this case was not void, but voidable only, and that it passed a title. That the deed is *515 voidable only, and not void, is in effect decided in the case of Haydon vs. Dunlap, 3 Bibb, 216; and in the case of Blight's Heirs vs. Tobin, 7 Mon. 612.
The right of a i^jured^by afraudinthesale •• under* ex’on61 to avoid thesheriff’s an^Tpprop’riate action,is not lost timeshoitofthat 3^!h[W£uld’ia to the action it-seIg2post’
Nor will the judg meilt ir> ? previ-quLhthe sale on ?ther s1,(railt,s >• bar the right to rely on the fraud..
But although the deed be voidable only, fox' the alleged fraud, we have no doubt that the defrauded party may avoid it by proof, when it is set up, as in the present case, to defeat his recovery of the thing conveyed, by the appropriate action. That the action of eje.ctment may be resorted to in such a case, and the deed be avoided in that action, unless the right of avoiding it be lost, has been impliedly assumed in this opinion, and may now be considered as well settled by numerous cases in this and other Courts. Haydon vs. Dunlap, 3 Bibb, 216, and the cases there cited; Cox vs. Joiner, 4 Bibb, 96; Morgan's Heirs vs. Patton, 4 Mon. 453; Dutch Warren, 1 Str. 406; Allison vs. Mathies, 3 Johns. vs. Rep. 235.
We are also of opinion, that the right of avoiding the deed in this case, was not barred by the mere lapse of six years, which intervened between the date of the sale and the commencement of this suit. It was decided at the present term, in the case of Howell’s Heirs vs. McCreery’s Heirs, [ante 388,] that the right of avoiding a sheriff’s sale and deed, by proof of fraud, is not barred by mere lapse of time short of that which bars the action or suit for the recovery of the thing. The same principle is, in effect, assei'ted in the case of Haydon vs. Dunlap; also, in Blight’s Heirs vs. Tobin, 7 Monroe, 612; and may be considered as implied in all the cases in-which the right of the defrauded party to avoid the deed set up to defeat his recovery in an action of ejectment,, is recognized.— Nor was the right of the plaintiffs’ lessors barred by the - i . • , ,. . . / , judgment against them, on their motion to quash the sale; which was commenced within a few days after the sale, and not finally decided until the expiration of four or five years. This point was directly decided, with regard to the same motion, in the case of Sanders’ Heirs vs. Buskirk, 1 Dana, 410; and the same principle, in effect had been previously decided in the case of Cox vs.. Joiner, supra.
Tho’ a fraudu-avoided6 by^he defrauded party, CTty'Vlreld^y the fraudulent pur ther who1, \"itha knowledge of the fraud, has acquired it from him, directly, or thro’ those only who knew of the fraud — whenever the property has passed into the hands of an inno cent purchaser for a valuable consideration, his title is sure, and the property is heyond the reach of the defrauded vendor. And this principle applies to sales under ex’ons, as well as to the private sales of individuals. So—
Where there was a collusion between a pltf. in an ex’on and the sheriff who had levied upon the defendants’ land, whereby the sale was fraudulently land sold to the adequate price" & an ex’on against him was soon after levied upon the land; which was again sold under ex’on and conveyed to the second purchaser, who, by private contract , sold and conveyed it to a third— it is held, (in this case passim,) that the defts. in the first ex’on, to sustain their ejectment, bro’t to reclaim the land, must show (to the satisfaction of the jury) that both the 2d and 3d purchaser, as well as the first, knew of the fraud; or that the last puchaser was a participant in the fraud, and the intermediate sale a mere contrivance to conceal the fraud in the first and last. Under the statute against fraudulent conveyances,the purchaser from the fraudulent debtor is not protected, if he purchased with notice of the fraud; but whenever the title passes to a bona fide purchaser for a valuable consideration, the fraud is purged, & the creditor’s right of pursuing the pro perty at an end. Time and acquiescence in a sale, operate in support of a subsequent purchaser’s title. And a very short interval between two sales, if known to the last purchaser,should induce enquiry on his part, &, with other circumstan ces, might affect him with notice. Vide post, page 516.
*516 There is no ground for supposing that the lessors of the plaintiff had confirmed the voidable title which passe(j to Norton by any act of theirs, or that they had lost the right of avoiding the deed, as against him, by acquiescence in the loss of their title. This is negatived by the facts already referred to. And if the instruction, that the deed was void if the fraud was established, had operated to exclude from the jury no other questions but these, we might have determined that, although erroneous, it was not prejudicial.
But the real question on which — supposing the fraud t0 established — the right of the lessors to avoid the deed, depends, arises out of the subsequent conveyances to Thomas and Myers, under which the defendants claim to hold the land by the title of the lessors. And, qs the instruction, by pronouncing the deed void, determines that these conveyances are ineffectual to pass the title, and places the defendants, or Myers, under whom they claim, on the same footing with Norton, the fraudulent grantee, without submitting to the jury the question whether either Thomas or Myers was a bona fide purchaser, for a valuable consideration — dhe instruction must be deemed to have been prejudicial to the defendants: unless it be true, either that the right of avoiding the deed remains unaffected by the fact that the title has passed into the hands of an innocent purchaser for a valuable consideration; or that, upon the evidence in this case, the Court had a right to assume, and the jury would have been bound to decide, that neither Thomas nor Norton was such a purchaser.
In the case of Mansel's Administrator vs. Israel, 3 Bibb, 515, it was decided, that the party who is defrauded in the sale of a chattel, may elect to affirm the contract, and claim damages for the fraud, or to disaffirm or avoid the contract, and claim the chattel itself; that the contract is obligatory upon the defrauded vendor, until he _ =., N , , . elects to avoid it, and that, as the title passes to the ven-¿ee jf se]¡ io a third person, in the mean time, the right is transferred to such third person, unafiected by fraud. In that ease, the innocence of the second purchaser is not expressed as one of the conditions on *517 which his right is to be adjudged good. But in the subsequent case of Arnett vs. Cloudas, 4 Dana, 299, the innocence of the second purchaser is taken as a fact essential to the validity of his title. If the same condition is not to be implied in the first case, we should think the doctrine there asserted inconsistent with reason and the general doctrines of the law. He who purchases from the fraudulent vendee, with a knowledge of the fraud, and therefore with an intention to withhold the property from the defrauded vendor, is in fact a party to the fraud, and ought not to occupy any better attitude than that of his immediate vendor. The law can have no regard for such a purchaser when he comes in competition with the original vendor. But the fair purchaser from the fraudulent vendee, is entitled to occupy an attitude as favorable, in every respect, as that of the defrauded vendor. And, on a question of reclaiming a title, or possession, on the ground of its having been lost by fraud, the law has ever made a distinction between the innocent and the guilty holder. Under the doctrine of the common law, in relation to sales in market overt, which had, in general, the effect of conferring a valid title, though the vendor may have obtained the chattel by fraud or felony, if the vendee knew of the fraud or felony, he could not resist the claim of the owner. The same distinction is made in the practical construction of the statute against fraudulent conveyances before referred to. If the grantee of the fraudulent debtor be a party to the fraud, his vendee, having knowledge of the fraud, is not protected against the. claim of the creditor; but whenever, at any time, the title passes to a bona fide purchaser for a valuable consideration, the fraud is purged, and the creditor’s right of pursuing the property is at an end. A similar distinction may be found in the doctrine applicable to purchasers at a sheriff’s sale, as already stated. The purchaser who has notice of the sheriff’s fraud, is considered as being particeps criminis, and is not within the policy which protects purchasers ignorant of the fraud.
This distinction between purchasers with and without notice, runs through the statute and common law; *518 and is a fundamental principle in a court of equity, whose doctrines are entitled to peculiar force in the question of avoiding a sale for fraud, in a court of law. Mansel's Adm'r vs. Israel. And it is a reason of no little weight, for protecting the innocent purchaser, even in a court of law, that, in a court of equity, in which the remedy for avoiding or rescinding a contract for fraud, has been long used, and in which the principles applicable to the subject have been matured and perfected, the right of the innocent purchaser is held inviolable, even in favor of a defrauded vendor, while the purchaser with notice of the fraud is held bound to surrender what ho has acquired in bad faith.
If, going beyond these examples and analagies, it bo enquired on what principle the law should refuse to aid the defrauded vendor in reclaiming the property of which he has been deprived, though it be in the hands of an innocent purchaser: it seems to be a sufficient answer to say, that he has acquired a legal title in good faith and for a valuable consideration. Why, then, should he be subjected to loss, in order to save the former owner from loss? The defrauded vendor has his remedy already against his fraudulent vendee, as the innocent purchaser would have, if he were made to surrender the property. If injury and injustice have been inflicted on the former, shall it be remedied by inflicting the same evil on an innocent man? If the defrauded vendor retained the title, notwithstanding the sale, he would, of course, be enabled to recover the property, notwithstanding the merit of the holder. But as he is divested of his title by the sale, and is without title until he makes his election to reclaim it by avoiding the contract, and as, in the mean time, the title is vested in an innocent purchaser, whose claim is as meritorious as his, there is no ground on which he can claim to be reinvested with the title. It is because justice is wholly on his side, that the law, in its equity, allows him to reclaim, at his election, a title which has passed from him into the hands of a party who, having concurred in doing or continuing the injury, may be justly held bound to make remuneration, His right of reclamation is sufficiently *519 rebutted by an equality of merit and of justice in the party who has acquired the title. The law will not injure one innocent party who has title, for the sake of doing justice to, or indemnifying, another innocent party who has no title; nor will it allow him, at his mere election, thus to throw his loss upon the shoulders of such a party.
It is intimated, in the case of Arnett vs. Cloudas, as an additional reason for this conclusion — and it is an additional reason — that the defrauded vendor has, by his own act, put the fraudulent vendee in possession of the evidences of title, and that some want of vigilance may be imputed to him. But it does not seem necessary to impute any demerit to him. It is sufficient that, in point of merit, he occupies no better ground than the. bom fide purchaser who has acquired the title.
The bona fide purchaser from a fraudulent vendee is protected, not only by the justice, but by the policy of the law. A regard for the peace and safety of society will not allow that ostensible titles, and especially that •ostensible titles to land, should be subject, after passing into innocent hands, to be defeated by proof that some previous conveyance had been induced by the fraud of the grantee. “ Titles which, according to every legal “ test, are perfect, are acquired with that confidence “ which springs from the opinion, that the purchaser is “ safe. If there be any concealed defect, arising from “ the conduct of those who held the property long be- <£ fore he acquired it, of which he had no notice, that “ concealed defect cannot be set up against him. The “ purchaser of a legal estate, without the knowledge of “ any secret fraud, which may have led to the original “ grant, can never be affected by that fraud.” Fletcher vs. Peck, 6 Cranch, 135.
As the deed which is obtained by secret fraud, may give no intimation of the fact, no ground of suspicion, no motive for enquiry and no means of ascertaining it, the law does not hold the subsequent purchaser bound to know, either the secret fact itself, or the secret right of avoidance founded on the fact. It, therefore, does not hold him bound to the consequences of such know *520 ledge, without notice either of. the fraud itself, or of some fact which should lead him to enquiry, and enable him to acquire knowledge. Without such notice, the title is to his eye, and “according to every legal test, perfect;” and therefore the law protects him in the honest acquisition of it. The law has ever made allowances for the secret nature of fraud. And if the defrauded vendor is excusable on this ground, for his ignorance of the fraud, much more must a subsequent purchaser be, who knows nothing of the transaction but that the title has passed.
On this ground, it might be urged that the defrauded vendor should be allowed an opportunity of discovering the fraud before his title should be held to be irrecoverable, even in the hands of an innocent purchaser. We have already said,* that time abstractly considered does not bar the right of avoidance until it bars the action in which that right is to be asserted. As against the fraudulent party, this is true, and would be universally true, if the right were an absolute one. But time and acquiescence are evidences of confirmation, of which a subsequent purchaser, even with a knowledge of the facts, may possibly avail himself, if he honestly relied on them in making his purchase. On the other hand, we are not prepared to say that, as between the defrauded vendor and a subsequent purchaser who is absolutely innocent, the shortness of the interval in which the title has been passed from the former to the latter, can have any effect whatever. The shortness of this interval, if known to the purchaser, may, in connection with other circumstances, apparent in the documents of title, or in the negotiation of the sale to him, be calculated to put him upon his guard, and by indicating the secret defect, should perhaps operate to affect him with notice, and thus to deprive him at once of the character of innocence and of the protection due to it. The reasonable time, therefore, within which, as it is said in Arnett vs. Cloudas, the defrauded vendor must make his election to avoid the sale, must be absolutely determined by the transfer of the title to the pure hands of a *521 bona fide purchaser for a valuable consideration, who can stand wholly unaffected by notice.
Remarks on the ji1^t3wIi°f hp“rj made sales dur-avIidThem when of age.
N It may be objected, that these restrictions upon the right of an adult to avoid his deed obtained by fraud, are inconsistent with the principle which allows an infant to avoid his deed, into whose hands soever the title may have passed, and without regard to time, except as a statutory bar running after he comes of age. But waiving the enquiry how far the mere acquiescence of an infant grantor after he becomes of age, may determine his right of revoking his title from the hands of a purchaser for value, who has acquired it after such acquiescence — we think the analogy between the cases is too slight to have any decisive influence upon the present question. The right of an infant to avoid his deed is an absolute and uncontrollable privilege, founded upon an incapacity, conclusively fixed by the law, to bind himself absolutely by deed, or to pass an indefeasible title. These principles are irreversibly fixed by the law, and it enforces them without enquiry into particular circumstances and without regard to consequences. It must do so in order to .maintain them.' The right of an adult grantor to avoid his deed for fraud, stands upon an, entirely different basis. It grows out of the particular circumstances; it is founded in a regard for justice between man and man; it is given as a remedy for the hardship of his case. In its very foundation and essence, it is limited by the justice which is due to others, and therefore, cannot be exercised without a regal’d to their rights and interests. But again: infancy is not, like fraud, a circumstance wholly extraneous from the title. The deed shows who the grantor is; the purchaser knows that an infant grantor cannot pass an indefeasible title; he is bound to know the identity of the person who assumes to convey the title; and it is not an unreasonable requisition, that he shall know whether the grantor, under whom he claims title, is under incapacity or not. In this view of the subject, no purchaser under an infant’s deed, is innocent, in the eye of the law, until the title has. been confirmed by the matured consent of the grantor.
*522 Upon this analysis of the questions growing out of a sale and conveyance by the vendor himself, to a fraudulent vendee, we have no doubt of the correctness of the principle asserted in the cases of Mansel vs. Israel, and Arnett vs. Cloudas, which confirms the title when it has passed into the hands of a bom fide purchaser for a valuable consideration. Does the same principle apply in the case of a sale and conveyance under execution, made by collusion between the sheriff and purchaser? This question is, of course, applied to a case in which there is no objection to the legal validity of the sale, but that which grows out of the fraud assumed. It has been shown that, in such a case, the title passes to the fraudulent purchaser. Of course, it passes to the bom fide purchaser from him. And the case of Blight's Heirs vs. Tobin, 7 Mon. decides that, in equity, he will be protected against the claim of the defrauded debtor. And why should he not be protected in a court of law? He, like the purchaser in the other case, has acquired the legal title in good faith and for a valuable consideration. He does not, it is true, trace his title to the deed of the defrauded party, but he traces it to the deed of the sheriff, who is authorized by the law to act for him, and in whom 'the law reposing confidence, itself invites the whole ■community to confide, and fully justifies the confidence of the subsequent purchaser. Surely it cannot, on general principles, be said that the title must be suspected, and fraud sought after, and that a subsequent purchaser as bound to know whether there has been fraud or not, because the title comes through a sheriff’s deed. Is a title, which, in other respects, is perfect, according to all the legal tests to which it can be subjected, to be deemed suspicions or invalid, merely because it has been derived through a confidential officer of the law? Such a doctrine seems to be contradicted by the policy of the law in regard to ostensible titles, and by its policy in relation to sales of this character, as declared in the cases already cited upon the subject of sales under execution.
But it is said that where, as in this case, one of the constituents of the fraud is the effecting of a sale in the *523 absence and without the knowledge of the owner of the ■ land, his rights must be greater than those of a vendor who, under a fraudulent inducement, makes a conveyance by his own act. But the presence of the debtor is not essential to the validity of the sale, or the operativeness of the sheriff’s deed. And if, as is certainly true, a bidder at the sale would not be bound to enquire whether the debtor is there, or why he is not, most assuredly a subsequent purchaser would not be. The mere manner, or particular object, of the fraud, can have no influence, unless it be such as to impress its footsteps upon the evidences of title, and is thus brought to the notice of the subsequent purchaser. And the mere fact that the sale was made in the absence and without the-knowledge of the debtor, though it may add to the hardship of the case, and tend to demonstrate the fraud, can-scarcely be considered as increasing his merit in the eye of the law, and does not seem to present a proper ground for throwing the loss upon an innocent purchaser. An - individual who, by service of process or by appearance,, is subject to the jurisdiction of a court, and has a judgment rendered against him, is certainly under some obligation to pay the debt, or at least to take notice of the subsequent proceedings. And if the imputation of negligence to a defrauded vendor, be one of the grounds, on which he is to be postponed to the subsequent purchaser who claims under his deed, this ground is not wholly wanting in the case of a debtor who neither satisfies the judgment, nor notices the proceedings for its coercion, and is defrauded out of his property in consequence of a sale made without his knowledge. But we do not impute this negligence as a ground of' depriving the injured debtor of any right which can be exercised without injuring others.
In one respect, the debtor who is defrauded by the-act of the sheriff, stands on better ground than the vendor who is directly imposed on by his vendee. It is, that the former may have confided, or had a right to confide, in the officer of the law. But he has no more right to confide in him, than a remote vendee claiming under his deed. And. certainly, he has a better oppor *524 tunity of preventing his fraud than the subsequent vendee can be expected to have of ascertaining its existence.
A party injured by the misconduct of a sheriff in his official acts, may resort to his bond for redress.
A sale made by a sheriff in fraudulent collusion with the parties, or the purchaser, may (as provided by statute) be set aside by motion within one year; and the same remedies, also, are open to the defrauded party which he would have had if the sale had been a private one.
There is, however, something in the fact that a fraud is committed by the officer of the law, in the execution of its process, which seems to require some more effective remedy than that which, on general principles, is allowed to the individual who is defrauded in a private contract. The law owes something to its own integrity. And the bare possibility that its officer may make its process the instrument of fraud and oppression, demands that it should furnish, efficient means of prevention or redress. To answer this exigency, the statutory laws have provided, first — that the sheriff shall give bond with security, to which any party injured by his official acts, may resort; and, second — that a sale made by him in fraudulent collusion with the parties or a purchaser, may be set aside on motion within one year. And, in addition to these, the same remedies are open to the party who is defrauded by an execution sale, as are given by the general laws to every other defrauded individual.
It has already been said,† that the time within which a defrauded vendor may make his election to avoid his contract, is absolutely determined by the passing of his title into innocent hands. And this seems necessary, first — because there is no principle by which any particular length of time could be fixed on, as the period within which the election might be made, without regard to subsequent purchasers; and the courts have no power to establish an arbitrary rule. And, second — because what might be a reasonable time in any particular case, would depend upon the character and circumstances of the fraud, and as they would be unknown to the innocent purchaser until after his purchase, he could not justly be subjected to the subsequent rule made upon and adapted to them. And, third — because public policy would not allow that titles voluntarily passed, should be locked up for any particular period, by an inflexible rule which, operating like that in the case of infants, would *525 subject them to be avoided for fraud, for a certain period after every alienation.
The same difficulties lie in the way of any attempt by a judicial tribunal, to fix a rule by which every debtor who is defrauded by a sale under execution, shall have either a fixed period applicable to all cases within which he may avoid the sale, no matter in whose hands the title may be, or just such time in each case, as may seem sufficient for the discovery of the fraud, and the assertion of his right. The latter rule would, from its uncertainty, be wholly unsuitable as a rule of. property. The former, if established by proper authority, would make the right of avoiding an execution sale for fraud, absolute within the prescribed period, and would notify the whole community, that the purchase of a title derived under such a sale, within that period, might be overreached by proof of fraud. In the case of coercive sales under legal process, a rule of this sort, fixing a reasonable period within which the alienation of the title derived under such a sale should not free it from voidability, might not be impolitic, unless for the reason that, by restraining the vendibility of such titles for a time, it might have the effect of depreciating the value of property sold under execution, and thus operate to the general injury of the debtors as a class. Otherwise, it would seem to be neither unreasonable nor practically unjust. But the power of creating such a rule, is not judicial, and there is no such rule to be extracted from the general body or analagies of the law.
Whether, in enacting, that a sale under execution might be set aside for fraud, on motion made within one year, the Legislature intended to establish such a rule, or whether such should be the constructive effect of the statute (Stat. Law, 628,) need not be determined in this case. For although Norton’s title was purchased by Thomas, within a few months after the fraudulent sale to Norton, and even if, on that account merely, he should under the operation of the statute, be considered as bound by all the effects of notice, and as acquiring a voidable title — still, as Myers did not, so far as appears, make his purchase from Thomas until after four years *526 ' had elapsed, the validity .of his title would be unaffected by the statute, and would depend upon the question of Jaw as to the right of avoiding the title after it had passed into innocent hands, or on the question of fact as to his innocence.
In the case of a fraudulent purchase under execution, as in that of other fraudulent purchases, the haste with which the purchaser may attempt to pass the title to a third person, may undoubtedly operate with other circumstances to carry notice of the frand to the subsequent purchaser. But independently ■ of this statute, we perceive no stable ground on which we are authorized to distinguish between a^ defrauded debtor, and a defrauded vendor, in regard to the right of revoking the title, or recovering the thing which has passed from them by the fraud of others. On general principles of law, neither has the right of avoiding the title after it has passed into the hands oCa bona fide purchaser for a valuable consideration without notice of-the fraud. And therefore, the right of ' each is limited as to the time of its exercise, by the fact, that the title has passed into such hands. If then, either Thomas or Myers was an innocent purchaser, for a valuable consideration, without any notice of the fraud, Myers would be protected against the claim of the lessors, unless it appeared that the sale under the execution against Norton, at which Thomas became the purchaser of the land, was itself a device, by which to interpose an innocent purchaser, as a mere conductor of the title from Norton to Myers, and with the intent of thereby purging it from the original fraud. In which case, the innocence of Thomas, if he were so, would not avail to protect the title in the hands of Myers.
We would remark, however, in relation to the statute — and the same observation applies to the power which a Court might have, independently of the statute, to correct the abuse of its own process, by quashing a fraudulent sale on motion — that, although it might be that, in the exercise of that power, and to give effect to that remedy the sale might be quashed, if the motion were commenced in reasonable time, without regard to any intermediate purchasers, it does not necessarily fol *527 low that, if that remedy be neglected, or unsuccessfully resorted to, the same principle which would have given effect to the right of avoiding the sale in that way, would be applied to any other and more general remedy to which he may afterwards resort, and in which, as he is not restricted to the time allowed for commencing his motion, he may not have the right of resorting to the principle, that no purchaser within that time, however ignorant in fact he might be of the fraud, could be deemed entirely innocent. If such be the principle applicable to the remedy by motion, either before or since the statute, it may perhaps, like the constructive effect given to a lis pendens, be confined to the effectuation of that remedy, leaving the fact of notice, in any other remedy which may be resorted to for the assertion and enforcement of the original right, to be established, like other facts, by the proofs in the cause.
where a tenant leafe?th? Ian,d> possession, and t^fbut advene" ly tó his former landlord, the effect is an interruption of the possession, not only of the place ■where the re-entry is made, but ■as to the whole tract — except so far as the landlord retains possession by other means.
Assuming this for the present, without deciding it to be so, it remains only to say, upon this branch of the case, that although the facts tend-strongly to prove that Myers had notice of the defect in the original sale, and would have authorized the jury to find that Thomas, the intermediate purchaser, also had notice of it, we can not determine that they are of that conclusive character, which would have justified the Court in deciding for itself, that either had notice, or would have made it the duty of the judge to set aside a verdict finding that either of them had not. The verdict rendered under this instruction, cannot, therefore, be sustained.
In the foregoing part of this opinion, Chief Justice E-obertson does not fully concur.
As for the error in this instruction, the judgment'must be reversed, it is onlv necessary to say that, the instructions relating to the evidence on the question, whether Doty, who was in possession under Sanders, had abandoned or surrendered the possession, and by subsequent re-entry had gained an adverse possession, seem to require this explanatory correction: that if Doty abandoned the possession, and afterwards re-entered under such circumstances as to gain possession adverse to *528 Sanders, the effect of such abandonment and re-entry would not only interrupt the possession of Sanders or his heirs in the part of the land on which the entry was made, but in the whole tract, unless their pqssession was continued as to the residue of the tract, by the occupancy of themselves or some one claiming under them, or by some other means.
The principles applicable to the rest of the case are embraced in the foregoing part of this opinion.
Wherefore, for the error, in the instructions given as to the effect of the alleged fraud in the sale to Norton, the judgment is reversed, and the cause remanded, that a new trial may be had without payment of costs.

Jlnte 515.

Ante 515,520.