## COSTILLO & KEHO v. THOMPSON.

1. The court cannot pass upon the effect of testimony, when the question to be determined is, whether an act was done with a fraudulent intent or not.
2. When the court commits an error in a charge to the jury, an appellate court will not refuse to reverse it, because the record discloses a fact, which would make the error unimportant; it not appearing that such fact had been relied on by one party, or controverted by the other, or any question raised upon it in the court below.
3. A deed by a husband, conveying his property in trust for the use and benefit of his wife, and children, without any consideration, but the existing marriage, is void, as to the existing creditors of the husband.
4. A deed for land, executed to a purchaser at sheriff's sale, is not void, because the purchaser made known at the sale the existence of certain deeds made to him by the defendant in execution, with the intention of purchasing the property below its value. Such deed, if impeachable, can only be impeached in equity. Whether a sale made by collusion between the purchaser, and sheriff, is not absolutely void—*Quere?*

Error to the Circuit Court of Mobile.

EJECTMENT by the defendant in error, for a lot of land in Mobile. The plaintiff below relied on a deed executed to him by the coroner, on the 8th December, 1843, upon a sale under a judgment of Steele & Bancroft, executors of J. Mc-

118

Clary, against James Keho, obtained in the Circuit Court of Mobile, on the .... day of .......

The defendant introduced a judgment against Keho, in favor of Jonathan Emanuel, obtained in the Circuit Court of Mobile, on the 29th April, 1841, and sheriff's deed to Costillo, dated the 6th September, 1842, for the premises. It was shown that the premises were worth $400 per annum. The deed of the plaintiff expressed the consideration of $20, that of the defendant, $200.

The plaintiff then produced a notice to the defendant, to produce two deeds, which he accordingly did, and they were read in evidence to the jury. One, a deed of trust executed by James Keho to Costillo, on the 4th April, 1840, by which he conveyed to him the premises in question, a negro woman, and all his personal property of every description, for the use and benefit of his wife, and child, reserving to them the use, possession, and enjoyment of the property. The other, a deed from the sheriff to Costillo, for the premises, upon a sale thereof for taxes, dated the 7th December, 1840, upon which is a declaration by Costillo, that he holds the premises in trust, for the wife and child of Keho. Both of the deeds were duly recorded.

The plaintiff then proved that Keho and his wife, were in the enjoyment of the property, and had been since the execution of the deed of trust; that the judgment of McClary, was founded upon a bill of bricks, used in the construction of the house, upon the premises, furnished in 1837.

He further proved, that Costillo and Mrs. Keho, were present at the sale to Costillo, that an attorney read the deeds to Costillo, to the purchasers assembled at the sale, and informed them the property belonged to Costillo, and if they bought it, they would buy a law suit.

The court thereupon charged the jury, that if they believed, that Costillo caused the deeds to be read at the sheriff's sale, with the object of deterring purchasers, and persons then assembled at the sale, from bidding upon it, in order that he might himself buy in the property, for a price greatly below its value, and that he was thereby enabled to buy it in, and did buy it in at a greatly reduced price, the sale was fraudulent and void as to creditors.

The counsel for the defendant then moved the court to charge, that the parties litigant did not stand in a situation to take advantage of each other, on account of the fraud imputed to Costillo, in the sale to him, which charge the court refused, and charged the jury, that if they believed the evidence, they must find for the plaintiff. To the charges given, and to that refused, the plaintiff excepted, and now assigns as error.

PHILLIPS and TEST, for plaintiff in error—

A purchase made by a trustee at *his own* sale, is not absolutely void, but vests the title in him, subject to be defeated by the action of the *cestui que trust* alone. [Wilson v. Troup, 2 Cowen, 195; Lester v. Lester, 6 Vesey, 631; Campbell v. Walker, 6 Ib. 678; 1 Hill C. 191; Brackenridge v. Holland, 2 Black. 397.] And this application of the *cestui que trust*, to be effective must be made in a reasonable time. [1 Caine's Ca. in Er. 1; Wilson v. Troup, 2 Cow. 195; Hawley v. Cramer, 4 Ib. 718.]

Misrepresentation by a purchaser at sheriff's sale, by which he obtains the land at less than the value, and receives the deed thereof, may be set aside in equity, but not at law. [Taylor v. King, 6 Munf. 366; Watt v. Grove, 2 Scho. & Lef. 501; Boyd v. Dunlap. 1 John. C. 483; Swift & Fitzhugh, 9 Porter, 65; Kennedy's Heirs v. Kennedy's Adm'r, 2 Ala. R. 57; Mordecai v. Wanroy, 1 Ib. 305; Love & Williams v. Powell, 5 Ib. 58.]

But the proof shows that there was *no misrepresentation.* The attorney stated at the sale, that Costillo claimed the premises by certain deeds of trust, &c., and that the purchaser would buy a law suit. The deeds were at the time on the records of the county, and verify the assertion.

But if the representation had been false, in order to give a right of action, it must also have been fraudulent. [Craig v. Blow, 3 S. 452.]

The plaintiff below seeks to obtain advantage of a transaction by which he was in no wise affected—supposing that the premises would have brought a larger sum of money but for the representations, to whom would the surplus have been paid? Evidently to Keho, the defendant in execution, for

there was no other execution, or judgment, against him than the one under which the sale was made.

Under the circumstances of this case, the possession of Keho, after Costillo's purchase, will not be deemed a badge of fraud. [Ravesies v. Alston, 5 Ala. 297.]

The possession is explained by the trust deed to Costillo, and although that might be considered as fraudulent as to creditors, yet it was a valid and subsisting instrument between the parties to it. [Burnet v. Bradford B'k, 11 Mass. 421; Sexton v. Wheaton, 8 Wheat. 229; Darman v. Radcliff, 5 Ala. 192.]

The tax title of 8th December, 1840, is free of all charge of fraud or misrepresentation. This is prior to the title of the plaintiff below, and was introduced by him—having thus made it evidence, for his own purpose, it became evidence of all that it contained, and the grantee was freed from the necessity of making proof either of its execution, or the fulfilment of the preliminary duties required by law of the officers conducting the sale.

Voluntary conveyance to a child not absolutely void as to creditors, but open to inquiry under the circumstances. [Hinds' Lessee v. Longworth, 11 Wheat. 213; Seward v. Jackson, 8 Cowan, 434; Jackson v. Post, 15 Wend. 588.]

If in this case the question of fraud was one properly for the jury, it was error to charge them, "if they believe the evidence, they must find for plaintiff." [Clemens v. Loggins, 1 Ala. 623; Stewart v. Hood, at present term.

If the question was for the court, then it is contended the evidence did not justify the conclusion, and as a question of law, this court will reverse it.

The bill of exceptions will not be considered as containing all the evidence in reference to a point which does not appear distinctly to have been made below. [Rives & Mather v. McLoskey & Hagan, 5 S. & P. 330.]

CAMPBELL, contra.

The deeds of Keho to Costillo, were fraudulent as to existing creditors. They purport to transfer his entire estate and provide that none of it shall be subject to his debts. The debt due McClary, under whose judgment and execution the

plaintiff claims, is a debt protected by the statute. [Cato v. Easly, 2 Stew. 214; Miller v. Thompson, 3 P. 196; Moore v. Spence, 6 Ala. 506.] Such conveyances are not fraudulent against subsequent conveyances unless there is an express intent to defraud. [Miller v. Thompson, 3 Porter.]

The plaintiff, under the facts of this case, would have the clear right to recover if Costillo had no other conveyance than that of Keho. Has Costillo strengthened his title by a purchase under Emanuel's judgment?

Could Costillo recover the property from a trustee appointed to defend the *cestui que trusts* in the deed of Keho, upon the evidence stated in this cause? It is clear that he could not. The deed of Keho to Costillo bears date in 1840. The judgment of Emanuel, which is the only evidence of a debt, was rendered in April, 1841. Emanuel was not a creditor within the meaning of the statute of frauds. The estate of Keho was vested in the trustee before that conveyance, and the purchaser could acquire no title. [Doe ex dem. Davis v. McKinney, 5 Ala. 719.]

What did Costillo, the trustee, acquire by the sale? Did he divest any estate in himself? or did he acquire the rights of Keho's creditors to contradict that deed? Before he could acquire the right of Keho's creditors, he must establish that Emanuel was such a creditor. [Eddins v. Wilson, 1 Ala. Rep. 237; McCreery v. Pursly, 1 Marsh. 114.]

It is clear that Costello's estate could not be divested by any person who did not claim as a creditor, or *bona fide* purchaser, without notice, and that the proof of the existence of the debt, was indispensable to the successful defence of the case. [1 Ala. Rep. 237, above cited.]

The decisions in favor of sales on junior judgments as divesting the liens of senior judgments, are not applicable to this case. The lien of the senior judgment will not be destroyed unless the two judgments operate on the same estate —and that the sale under the junior judgment would be operative to convey all the rights that a sale under the senior judgment would have done. There would be no propriety in transferring the lien of the senior judgment to money in the place of land, if only a portion of the estate bound by the senior judgment has been sold.

Suppose a judgment obtained against a debtor, &c., subsequent sale by the debtor, and after this, a judgment, execution and sale of the land, as the estate of the debtor, and a purchase by mesne purchaser. It is evident the lien of the first judgment would still be unimpaired. The debtor had no estate bound at the time of the sale, by the judgment under which the sale was made—consequently the two judgments were distinct in their operation, and the act by the sheriff under the one would not affect the other. The same subject can be illustrated by another case. Suppose a judgment to be rendered—afterwards the debtor conveys a portion of the lands bound by the judgment, absolutely, or in mortgage, and afterwards dies insolvent. The lien of the judgment is divested by the death and insolvency, so far as the claims of the general creditors are concerned, but it remains unimpaired as to the lands not subject to the claims of such creditors, and in the hands of the mortgagees or purchasers.

So in this case a sale by the sheriff of lands in the possession of Keho, and subject to both judgments, under either, would divest the lien of both upon such lands.

It would not have that affect so far as concerns those lands which may be reached by one class of creditors, and cannot be attached by the other class.

No proof of any of the requirements of the law—no title could result from such a deed. The case then stands thus, without any of the fraudulent circumstances occurring in the case. The case is one of clear fraud throughout, and the court was authorized so to pronounce it, on the facts of the case. These facts are,

1. Costello is the trustee in a deed by Keho *in fraud of his creditors*.

2. He proceeds to a public sale and reads conveyances to deter biddings, and purchases property worth from three to four hundred dollars per annum, for two hundred dollars, at the sale which he had obstructed—Keho and wife being present.

3. Keho remains in the possession of the property at all times, and makes the repairs and improvements upon it.

4. No evidence is shown that the trust is in any manner

Costillo & Keho v. Thompson.

fulfilled, although the trustee is charged with the performance of active duties.

Has the Circuit Court jurisdiction, to pronounce a sale, under these circumstances, void? The case of Love, et al. v. Powell, 5 Ala. Rep. 58, does not bear upon this. That case was one of irregularity by the sheriff, caused by the plaintiff.

The cases of fraud in the sale, produced by the act, with the concurrence of the purchaser, are distinguishable.

When a party deters the company from bidding, by statements reaching their sympathies, there is no sale. [Fuller v. Abrahams, 3 Brod. & Bing. 116.]

A sale by the sheriff is made upon the principle of a fair competition among the bidders, and contrivances to prevent it makes the sale void. [Doe ex dem. Smith v. Greenlee, 2 Dev. 126; Lessee of Wutzell v. Fry, 4 Dallas, 218; Thompson v. Davis, 13 Johns. 112; Lessee of Swayze v. Burke, et al. 12 Peters, 11; Doe ex dem. Dobson v. Erwin, 1 H. Bat. 569; Thomas & Hitt, 5 B. M. 590; Hamilton v. Shrewburg, 4 Rand. 427; 7 Dana, 515.]

The facts shown by this record disclose a strong case of a secret trust.

The continuance of the defendant in possession, and making improvements, is conclusive. [Hildreth v. Sands, 2 J. Ch. R. 46; Perrine v. Dunn, 3 ib. 516; Fonda v. Gros, 15 Wend. 630; 1 Dev. Eq. 441.]

The jurisdiction of courts of law and equity is concurrent in matters of fraud. [Castleberry v. Coster, 5 Ala. 277.]

The proposition of the sacrifice of the property at the second sale, is well answered by Chancellor Kent, in cases cited from the Chancery Reports. It is the result of the fraudulent conduct of the parties, and is the ordinary punishment which befalls those who indulge such practices.

The bill of exceptions contains the whole evidence. It is quite amusing to hear the complaints of their own bill of exceptions from the plaintiffs, and the anxiety to introduce something in the case which does not appear.

The plaintiff in error must show error in the record, and it must be a clear and palpable error. Nothing will be intended or inferred. Error must be apparent and manifest. The

language of the writ of error is that *manifest error* has intervened to the plaintiff's damage.

ORMOND, J,—There can be no doubt that the court erred in its charge to the jury, that if they believed the evidence, they must find for the plaintiff. The evidence referred to by the court, was the testimony relating to the conduct of Costillo, at the execution sale, when he became the purchaser of the land in controversy—which was, causing the trust deed from Keho, to him, and his deed from the sheriff for the land when sold for the taxes, to be read, and informing the persons assembled at the sale, that he claimed the land, and if they purchased it, they would buy a law suit. Whether this conduct of Costillo was fraudulent or not, was a question which the jury alone could determine. It certainly was not improper to give notice of the existence of these deeds, and could only become so, by being done with a fraudulent intention. This intent the court could not of its own mere motion, determine as matter of law ; it was peculiarly a question of fact to be left to the jury.

It is insisted the court did not err, because the deed to Costillo was void as against existing creditors : that the proof shows, that the lessor of the plaintiff, claimed under a judgment founded on a debt of a creditor of Keho, created antecedent to the execution of the deed, whilst the judgment of Emanuel, under which the defendant deduced his title, though older than that under which the lessee of the plaintiffs claimed, was not shown to have been founded on a debt existing, when the deed from Keho to Costillo was made, and that therefore the court was justified in telling the jury the plaintiff was entitled to recover.

The objection to this argument is, that the question as now presented, was not, so far as we can judge from the record, made in the court below. The whole controversy appears to have been upon the fraud supposed to have been committed by Costillo, in causing his deeds to be read at the sale, and it was in answer to a charge prayed for by the defendant, that if the fraud, as alledged, really existed, the plaintiff was not the proper person to take advantage of it, that the court informed the jury they must find for the plain-

tiff. If the question now made, had been distinctly stated, it would in all probability have appeared from the record itself, that the judgment of Emanuel was also founded upon a debt, existing when the deed to Costillo was made ; and having a prior *lien*, would be entitled to priority. It is a sufficient answer to the argument, that this point was not made in the court below, and cannot therefore be considered here. As, however, the cause has been argued here, as to the effect of the deed upon the existing creditors of Keho, and also upon the effect of the fraudulent conduct of a purchaser at sheriff's sale, upon the sheriff's deed ; and as these questions must arise upon another trial of this cause, we will now proceed to their consideration.

The deed from Keho, to Costillo, was made the 4th April, 1840, and conveys the premises in dispute, and all the personal property of Keho, in fee, to Costillo, in trust, for the use and benefit of the wife, and child of Keho, and such other children, as may be born of the marriage : and secures to the wife the possession, and enjoyment of the property, for the maintenance and support of the family, and that the same shall not be subject to the debts of the grantor ; and upon the death of the wife, the husband to be a tenant in common with the children, with the right of survivorship. The only consideration expressed in the deed, is the existing marriage.

There can be no doubt that this deed is void as to the existing creditors of Keho. Not being made upon a valuable consideration, it is within the 2d section of the statute of frauds. [Moore v. Spence, 6 Ala. Rep. 506, and cases there cited.]

The more difficult question remains to be considered. Conceding the acts imputed to Costillo, to have been done with the intent, that he might thereby be enabled to purchase the land, at a reduced price, is it such a fraud as will vitiate the deed in a court of law ?

Fraud is doubtless cognizable, both at law and in equity, and it is equally true as a general proposition, that fraud vitiates the most solemn acts into which it enters. These general propositions are unquestionable, but they must be considered in connection with others equally well settled. Al-

119

Costillo & Keho v. Thompson.

though the law abhors fraud, it also exacts justice between man and man, and will not permit one wrong, to justify another. When fraud enters into the execution of a deed, as if it be falsely read to the party executing it, or be obtained from the party, when from intoxication he is unconscious of his acts, in these and the like cases, the deed is wholly void, and must be so declared, by every court before whom it is attempted to be enforced. When the instrument itself, through which the party deduces his title is not a nullity, a court of law will not go beyond the deed, and investigate the conduct of the parties to it, anterior to its execution, to see whether the deed is not impeachable. It will not do this, because from its constitution, it can take no middle course, but must give effect to the deed, or declare it entirely void ; whilst a court of equity, acting on the conscience of the parties, can administer exact and equal justice between them.

These principles, have by a series of adjudications received the sanction of this court. [Swift v. Fitzhugh, 9 Porter, 65 ; Kennedy v. Kennedy, 2 Ala. 571 ; Mordecai v. Wanroy, 1 Ala. 100 ; Morris v. Harvey, 4 id. 305 ; Love v. Williams and Powell, 5 Ala. 58 ; see also Taylor v. King, 6 Mun. 366 ; Watt v. Grove, 2 S. & L. 501 ; Boyd v. Dunlap, 1 Johns. C. 483.]

This doctrine is unquestionable, as applied to the private acts of individuals ; is the case varied by the fact, that this was a public sale by the sheriff ?

We are not aware of any rule of law, or question of expediency, which should distinguish public from private sales. The same great principles lie at the foundation of both, and in ascertaining their validity, the same rules of law and equity, apply in the one case, as in the other. The sheriff may be considered as acting in a double capacity. He is not only the agent of the parties, he is the ministerial officer of the court, appointed to fulfil its mandates, and if he acts oppressively, or in such a manner as injuriously to affect the interests of the parties to the suit, the court, whose agent he is, will supervise his conduct, and in a summary way, on motion of the party aggrieved by his conduct, set aside the sale. If he collude with the purchaser, it may be that his acts are void, and no title passes to the purchaser by his sale.

We are aware that cases may be found, in which it has been held, that the improper conduct of the purchaser at the sale of property under execution, amounting to fraud, vacates the sale, and that the title does not pass by the sheriffs's, deed such are the cases of Smith v. Greenlee, 2 Dev. 126, and Swayze v. Burke, 12 Peters, 11. But we feel constrained to adhere to our own adjudications, until, upon established principles of law, they can be shown to be erroneous. Under our complex system of jurisprudence, it is not to be wondered at, that discordant decisions should be made; and whilst we cheerfully admit, the high character of the tribunals which hold a different opinion, we think in this particular the law has been misapprehended.

In Love v. Williams & Powell, 5 Ala. 58, this question came directly before us, and it was there held, that a sheriff's deed was conclusive, and could not be impeached, upon a collateral issue, except for fraud in its execution. So in Myers v. Henderson's heirs, 7 Dana, 511, where this question was elaborately considered, it was held, that notwithstanding there was a secret fraudulent combination, between the sheriff and the purchaser at an execution sale, the deed of the sheriff passed the title to the purchaser, voidable only by the defrauded party. In Taylor v. King, 6 Mumford, 366, which was a sale of land under a trust deed, the purchaser by his fraudulent conduct at the sale, obtained the land at about one-seventh of its value. The court held that the legal title passed to the purchaser, and could not be impeached in a court of law.

The case of Dobson v. Erwin, 1 Dev. & B. 569, was where the purchase was made with the money of the defendant in execution, and the court held that the title was not changed by the sale.

In most of the cases, where sales at auction have been held void, because of puffing, fraudulent combinations at the sale, &c., the question has arisen, either by an attempt on the part of the purchaser to enforce the sale; as in Fuller v. Abrahams, 3 Brod. & B. 116; or by an attempt on the part of the purchasers, to enforce the contract among themselves: such was the case in Phippin v. Stickney, 3 Metc. 384; and

it is by not attending to this distinction, that so much confusion exists upon this subject.

The consequence of holding, that no title passed to the fraudulent purchaser at an auction sale, would be, that he could not transfer the title to another, and it would be void in the hands of an innocent holder, without notice of the fraud. In the analagous case, of a fraudulent purchaser under the statute of frauds, though the property in the hands of the frauduleut vendee, may be reached by a creditor of the fraudulent vendor, yet if it pass into the hands of a purchaser for a valuable consideration, without notice, he can protect himself against the creditors of the original vendor, which could not be, if the title did not pass to the first vendee, notwithstanding the fraud.

Nor is there any consideration of public policy hostile to the view we are taking. When by fraud at a sale by execution, a purchaser obtains property at an inadequate price, the persons injured, are the parties to the suit, and the creditors of the defendant. The former may have a summary remedy by setting aside the sale ; and the creditors may proceed in equity, to subject the property to the payment of their debts. If the title does not pass, and the property may be again seized, and sold, the inevitable result is, that such a doubt is thrown over the title, that it is purchased for a mere song, and the consequence follows, that no one is benefitted at last, but the final purohaser. The unfortunate defendant in execution, finds himself stripped of his property, and his debts unpaid, by the operation of a rule designed for his benefit.

Nor is it a small consideration, that upon this view of the law, the original purchase money is returned to the vendee. The frauds so called, which vacate sales of this character, are generally constructive, and do not imply the moral guilt, which fraud in its proper sense always necessarily imports; and in our opinion, it is harsh, if not oppressive, to impose as a penalty upon the purchaser the loss of the money actually paid.

These considerations satisfy us, that we should not disturb the law so long acted on by this court. We feel a strong conviction, not only that the law has been correctly expound-

ed, but that the best interests of society require, that it should be adhered to.

The judgment must be reversed and the cause remanded.

NOTE.—See this case commented on and explained in the succeeding case of Ansley v. Carloss.