Colquitt *vs.* Thomas *et al.*

No. 45.—WALTER T. COLQUITT, plaintiff in error, *vs.* NICHOLAS S. THOMAS *et al.* defendants.

[1.] A sells lands to B, and gets judgment on the notes given for the purchase money, and levies on the lands in the possession of C, a purchaser from B; C puts in his claim : *Held*, that upon the trial of the claim, it is not competent for A to set up, by proof, his lien as vendor, but that he must go into Equity to establish his lien, and there get a decree that the land be sold to satisfy it.

[2.] The Circuit Judge, in opening his charge to the Jury, said, "that he wished counsel to take notice of his charge, for he supposed the case would be taken up, and if he erred, he could be corrected; and if *the Jury found contrary to evidence, they could be corrected:*" *Held*, that the remark, relative to the Jury, was improper, as tending to relieve them from the exclusive responsibility of trying the facts of the cause.

[3.] Fraud cannot be presumed at Law, but it may be proven, from circumstances.

[4.] To hear reports about an incumbrance upon land, which the purchaser is about to buy, does not amount to notice, nor is report or rumor a badge of fraud.

[5.] The presiding Judge is requested, by counsel, in the hearing of the Jury, to give in charge a legal proposition, to which request, he replies, "well, I charge it," without anything more. This, held to be error.

[6.] Upon the trial of a claim, it is not competent for the claimant to prove the *bona fides* of his purchase, by proving the conversation that passed between himself and his vendor, in relation to what he gave for the land, at a time subsequent to the purchase.

[7.] The pendency of suits against a debtor, at the time that a purchaser buys lands of him, is a badge of fraud and a fact which the Jury are at liberty to consider, in determining whether the purchaser bought with notice or not, under the Statute 13 *Elizabeth*.

[8.] To subject land to a judgment, sold by the defendant, before the judgment, to A, and by A sold to B, it is necessary that the plaintiff prove that the defendant sold fraudulently, and that both A and B had notice of the fraud, under the Statute 13 *Elizabeth*.

[9.] One who buys from a fraudulent grantee, without notice of the fraud, and one who buys from an innocent grantee, with notice of the fraud, will be protected under the *proviso* in the Statute 13 *Elizabeth*.

[10.] If one buys lands of a debtor, and pays a part of the purchase money before getting a deed, and before paying the balance of the purchase money and before getting a deed, learns that the purchase money is unpaid by the debtor—that he is insolvent, and that suits are pending against him: these facts may be submitted to the Jury as evidence that he purchased with notice of the fraud, under Statute 13 *Elizabeth*.

Colquitt *vs.* Thomas *et al.*

[11.] The sayings of an agent, after his actings as agent, are not competent to prove his agency.

Claim, in Campbell County.    Issue joined, October, 1847. Verdict, "not subject," and decisions complained of—by Judge HILL, at October Term, 1849.

This was a claim case.    Walter T. Colquitt had sold certain lands to Nicholas S. Thomas, taking in part pay certain notes, which he sued to judgment, and levied the *fi. fa.* issued therefrom for $5,999 99½ upon said lands, or a portion thereof—the defendant, Thomas, admitting in his plea that the notes were for the lands afterwards levied on.    On the claim trial, plaintiff in *fi. fa.* showed the grant to one Hiram Howard, then a deed from Howard to said N. S. Thomas and John P. Timberlake, (showed no title passing through himself,) and read other *fi. fas.* and judgments, at suit of other plaintiffs *vs.* said Thomas.

It appeared that said Thomas had sold said lands to A. H. Harrison and C. Williams, who subsequently sold to Nathaniel Harrison, who was the *claimant* on said trial.    After the above testimony by plaintiff in *fi. fa.* claimant offered the said deed from Thomas, dated 30th March, 1844, then the deed from A. H. Harrison and Williams to claimant, dated 27th May, 1845.    Colquitt's declaration *vs.* Thomas was returnable to April Term, 1844, and service acknowledged by Thomas, 6th January, 1844, and judgment in October, 1845.    Plaintiff introduced various other testimony, and so did the claimant, which so far as material, and as elucidating the issues, will appear in what follows:

When claimant offered the testimony of a witness, as to what "he understood from the claimant, Abel Harrison and Clayton Williams," plaintiff below objected.    The Court overruled it, and let in the testimony.

After the testimony closed, the Court charged the Jury, among other things, that he "wished counsel to take notice of his charge, as he supposed the case would be taken up, and if he erred, he could be corrected, and if the Jury found contrary to evidence, they could be corrected"—that "the pendency of the suits did not operate as notice, either positive or constructive, for the notes did not express the consideration for which they were given, and though the plea set forth that fact, the plea was not verified, and

if taken as evidence at all, would have to be taken together, and it set forth a partial failure of consideration." Further charged, "if the purchaser bought, *bona fide,* and had paid the purchase money, or any considerable part thereof, before he received notice of the incumbrance, he could go on after notice and pay the residue, and his title would be protected in this case, but that, perhaps, it would not in Equity—the plaintiff not now relying on his lien for the purchase money." Further, "that to hear *reports* about an incumbrance, did not amount to sufficient notice in Law ;" and, by request of claimant, "the burden of proof was on plaintiff to show fraud, and that fraud was never to be presumed, though it might be proven by circumstances." The plaintiff's counsel then, verbally, it seems, asked the Court to charge the Jury as to a certain legal position, to which request, the Judge replied, " well, I charge it." The plaintiff's counsel then, in writing, requested the Court to charge, that "if they believed the deed to Harrison & Williams to defendant in *fi. fa.* was fraudulent, as to creditors, and that the claimant knew of the indebtedness of defendant in *fi. fa.* for the purchase money, or his insolvency, and the pendency of the suits, before he paid the purchase money and received title, that such title did not defeat the incumbrance, and was fraudulent." This the Court refused, and repeated the above charge, as to where notice was received after the trade and before payment, &c. as being the law *in this* case. Claimant then asked him to charge " that the sayings of C. Williams were not evidence to establish his agency." This the Court charged, adding that " testimony could be legally received for one purpose, and when so admitted, could not be made evidence for a different purpose; and that in this case, Williams' sayings, made after his agency, were not evidence to prove his agency." To the manner of said last charge, and to the refusal to charge, as herein set forth, the plaintiff in *fi. fa.* excepted.

The Jury found the property "not subject."

Plaintiff in *fi. fa.* then excepted—

1st. To the testimony of the witness, as to what he "understood from claimant and A. Harrison & Williams," and " in admitting parol evidence, (a part of said sayings,) to prove a contract for land."

2d. That the Court erred in saying to claimant's counsel, in the hearing of the Jury, that he " was by no means certain that

Colquitt *vs.* Thomas *et al.*

he was correct in rejecting the testimony of L. B. Watts, and as it did not amount to much, they had, perhaps, better suffer it to go before the Jury."

3d. As to that part of the charge *already recited,* as to the case being carried up, if he or the Jury erred, &c.

4th. That he erred in saying what he did—already recited—as to pendency of suits being notice, &c.

5th. That he erred in charging what he did—already recited—as to the right of the purchaser to go on and pay and take title after notice, &c.

6th. Also erred in *refusing* to charge what—is already recited—he was asked to do, as to claimant having notice of any fraud in the sale from Thomas to claimant's grantors, &c.

7th. That he erred in his charge, as to "reports as to an incumbrance,"—as recited—unless he had explained what he meant by reports, and that this charge was not applicable to the case.

8th. That he erred in saying—as recited—the burden of proof of fraud was on plaintiff, and was never to be presumed, &c.

9th. That he erred in not pronouncing (repeating?) the specific thing which he was requested by plaintiff to charge, instead of saying "well, I charge it."

10th. That he erred in saying that the sayings of Clayton Williams were not admissible in this case, to prove his agency.

S. T. BAILEY and C. B. COLE, for plaintiff in error, cited the following authorities:

*Roberts on Fraud,* 2, 3, 5, 122, 231, 422, 520, 1, *and note,* 595, 600, 1, 2, 7. *Lowry vs. Pinson,* 2 *Bailey's R.* 328. 18 *John. R.* 427. 1 *Conn. R.* 295. *Mitf. Pl.* 275. 2 *Danl. Pr.* 777. *Story's Eq. Pl.* §806. *Sugden on Vendors,* 760. 2 *Fonbl.* 414, *n.* 2 *Mad. Ch.* 322. 3 *P. Williams,* 307. 4 *Kent,* 180. 1 *Atk.* 384. 3 *Leigh,* 365. 1 *Story's Eq. Jur.* §395. 1 *Munf.* 38. 2 *Ib.* 38, 129. 2 *Hen. & Munf.* 316. 2 *Atk.* 630. 2 *J. C. R.* 158. 5 *Ib.* 229. *Harden's Rep.* 37. 1 *Hare,* 43. 6 *B. Monr.* 67. 7 *Ib.* 312. 1 *Watts & Sergt.* 142. 3 *Day,* 503. *Co. Litt.* 344. *Powell on Mort.* 548, 547, *note r.* 3 *Atky.* 392. 13 *Ves.* 120. 1 *Ch. Cas.* 291. 1 *Cond. Ch. R.* 550. 5 *Price,* 306. 16 *Ves.* 419. 1 *John. C. R.* 301. 10 *John.* 462. 1 *Bur.* 149. *Cross on L.* 79. 2 *Atky.* 411. 1 *Vermont R.* 465. 3 *Har. & John.* 426. 4 *John.*

234. 14 *Mass. R.* 245, 250.    3 *Kelly's Rep.* 513.    1 *Stewart's R.* 394.    1 *Brevard*, 166, 266.    4 *Mass.* 702, 8.    4 *John.* 234, *note*. *Riley's Cases*, 270, 2.    1 *Gallison*, 106.

Ezzard and Latham, for defendants in error, cited—

*Greenl. Ev.* 119, 20, 25.    1 *Story's Eq.* §372, 190.    1 *Fonbl.* 444, 347.    2 *Powell on Mort.* 564.    7 *Viner's Abr.* 123.    3 *John. Ch. R.* 516.    12 *Wend.* 41.    4 *Bac. Abr.* 402.    3 *Sugd. on Vend.* 117, 315.    8 *Cowen*, 260.    10 *John.* 457.    3 *Serg. & Rawle*, 429. 18 *John.* 555.    1 *Wash.* 4.    3 *Kelly*, 446.    4 *Georgia Rep.* 104. 1 *Kelly*, 157.    2 *Ib.* 1.    1 *Smith's Lead. Cas.* 29 *to* 60.    5 *Ga. Rep.* 293.    13 *Ves.* 121.    1 *Ves. Jr.* 226.    6 *Ga. Rep.* 344, 525.

*By the Court.*—Nisbet, J. delivering the opinion.

The plaintiff in execution, Judge Colquitt, sold a body of land to the defendant in execution, Dr. Thomas—taking his notes for the purchase money.  He sold to Harrison & Williams, and they to the claimant, Mr. N. Harrison.  Colquitt sued and obtained judgment against Thomas, on his notes, for the purchase money, but not until after the sale of the lands to the claimant. A levy was made on the lands, and a claim interposed by N. Harrison, the last purchaser, and all the questions brought up, were made on the trial of the claim.

[1.]  This summary statement is made, for the purpose of introducing a preliminary question, discussed at this bar—one of great practical importance, and affecting, very seriously, the rights of the parties.  It is due, therefore, to the merits of the cause, as well as to the distinguished counsel moving it, that it be considered and determined.   The proposition of the plaintiff in error is this :  Upon the trial of a claim, between the vendor of lands, and a purchaser, claiming under his vendee, it is competent for the plaintiff in execution to set up, by proof, his lien as vendor, and for the Jury to find the land subject, upon that ground, and for the Court to order the land to be sold to satisfy that lien.   The vendor's lien is founded in a fundamental principle of Equity—that one who has gotten the estate of another, without paying for it, cannot in conscience keep it.   The principle applies not only to the vendee, but to his heirs, and other privies in estate,

and to purchasers having notice that the purchase money is unpaid. The equitable principle is made available, by an implied trust. This lien attaches upon the lands, for the whole, or a part only, of the purchase money.   If the whole is due, it attaches for the whole—if a part only, then only for that part.   It may be waived by an express agreement between the parties, or without an agreement; as, for example, when the vendor takes independent security for his purchase money, and relies upon that security. When, and under what circumstances, this lien has been waived or displaced, is always an embarrassing question, and not clearly settled by the authorities.   So fruitful of litigation is this question, that Lord *Eldon* expressed, upon one occasion, a doubt whether it would not be better to have held, that the lien should exist in no case, or to have laid down the rule the other way, so distinctly, that a purchaser might be able to know, without the judgment of a Court, in what cases it would, and in what it would not, exist.   *Mackreth vs. Symmons*, 15 *Vesey*, 340.   These general principles being held in the mind, the solution of the question of practice we are to consider, will become the easier. *Story's Eq. Jurisp.* §§789, 1217, 1218.   4 *Kent*, 151, '2, '3, '4. 6 *Johns. Ch. R.* 403.   1 *Ch. Cases*, 39.   1 *Atk.* 572.   3 *Ib.* 273. 15 *Vesey*, 329.   2 *Ib.* 622.   9 *Ib.* 209.   1 *W. Bl. R.* 150.   1 *Johns. Ch. R.* 308.   1 *Sch. & Lefr.* 132.   7 *Wheat.* 46.   10 *Peters*, 625.   *Sugden on Vendors, ch.* 18, §1.

To assert this lien, it is necessary, in England, to go into Chancery.   So, also, it has been considered and held in this State.   Can it be set up, in an issue founded on a claim?   We consider that it cannot, without a departure from a practice long acquiesced in—without a violation of the necessary rules of pleading, and without an abandonment of principle.   Our proceedings before a Court of Law, upon claims, are *sui generis*, and partake of an equitable character.   So far, however, from deriving from that fact an argument in favor of this new practice, I derive therefrom, the reverse inference.   If, in a special case, the Legislature has thought fit to clothe a Court of Law with equitable powers, the jurisdiction is a special grant, and is to be confined to the cases in which it is authorized.   We have a Court of Chancery, distinct from a Court of Law, differing from it in the principles upon which its jurisdiction is founded—in its mode of procedure—and in the relief which it affords.   Until the Legisla-

ture shall blend them into one, and obliterate all these distinctions, for my own part, I shall hold the two Courts, with unswerving strictness, to their respective spheres. A grant of equitable powers, in a specific mode of procedure, so far from drawing with it other equitable powers, upon approved principles, excludes all others. *Ex necessitate*, the trial of a claim is, *quasi*, an equitable proceeding—not made so expressly, by the Legislature, but becoming so in the inherent necessity of the case. According to the usage of the Courts, and the full current of authority, equitable liens can be enforced only in Equity, by appropriate pleadings, by bringing all the parties interested before the Court, and by a decree which protects the interest of all parties : and in all this, the law is profoundly wise. In this case, what is the issue made upon the record ? The plaintiff having ordered a levy upon the land, the purchaser puts in his claim ; the Sheriff returns the papers to the *Superior Court*, and there issue is joined. What is that issue ? It is expressed on this record, in these words :

" And now, at this Term, comes the plaintiff in execution, and alleges that the property levied upon by his *fi. fa.* aforesaid, is subject thereto; and for this truth, he tenders this issue, and puts himself upon the country.

" W. T. COLQUITT, *Plaintiff.*

" And the claimant denies that the property is subject, and doeth likewise.

" THOS. A. LATHAM,
" DAVID IRWIN,
" WM. EZZARD,
" *Attorneys for claimant.*"

The record shows no more than this. Upon this dangerously brief and pregnant issue, what is to be tried ? The law and the facts *as to the liability of the property to the execution.* The plaintiff asserts that the property is subject to his execution; by which he means to say, that it belongs to the defendant in execution, and, therefore, the lien of his judgment attaches upon it. The claimant denies this upon the record, and the war begins pell-mell. If it should appear in proof, that the plaintiff's judgment is older than the claimant's title from the defendant in exe-

cution, the issue might, or might not, be a simple one. *Prima facie,* the property belongs to the defendant at the date of plaintiff's judgment, and the lien attaches, and the claimant is driven to shew whatever he can shew, to remove the presumption, and to displace the lien. But if the title to the claimant be older than the date of the judgment, (and that is the fact here,) then the plaintiff may proceed to shew, notwithstanding that fact, that the property is the property of the defendant in execution, and liable to his judgment. For example—he may shew that the conveyance of the property, by the defendant in execution, was with intent to delay, hinder and defeat him, as a creditor, and that the claimant had notice of such intention, and claim thereby the protection of the *Stat.* 13 *Elizabeth.* All these things, and more, may be gone into, upon the brief issue stated. Well might a stranger to our Courts demur to our claim laws, and suggest, that, by appropriate pleadings, these serious issues should appear upon the record. But I advert to them now, to show, that the question made is, whether the property levied on is the property of the defendant, and liable to the lien of the judgment. The plaintiff's burden is to establish that fact; he goes upon the assumption that it is true ; and however the issues may multiply, and whatever may be the wanderings of the evidence, still that is the point of departure, and to that it is obliged to return. Now, if this is the issue between the parties, then I say neither by the pleadings, nor upon principle, is the *vendor's lien* involved. Pleadings, to set forth the vendor's lien, there are none—in fact, no pleadings of any kind, except the informal issue which I before transcribed. Nothing is, in truth, put in issue by the record, in a claim case, but the liability of the property to the plaintiff's judgment. The title of the claimant is tried, but no issue is made on the record about that. It is a feigned issue— feigned, albeit it involves title to lands. That the sole legal issue is the liability of the property to the judgment, is proven by the verdict. The finding is single : " We, the Jury, find the property subject"—or, " We, the Jury, find the property not subject;" and by the judgment rendered on it, usually, nothing more, when the finding is for the plaintiff, than a simple order that the execution proceed. Our Act of 1799 requires that the plaintiff's cause of action, and the defendant's answer thereto, shall be plainly, fully and distinctly set forth. Either, when the

vendor comes into Court to establish and enforce his lien, he ought to be required to set it forth fully, plainly and distinctly, or the Statute which requires this to be done is flagrantly disregarded. The same is true of the claimant's defence. The defendant in execution is entitled to be heard against the vendor's lien—he may have waived it—it may be, in part or in whole, satisfied—or he may have taken other security. In a bill, the plaintiff's cause of action would be set forth—the defendant in execution, the claimant, and intermediate purchasers, if any, could be made parties. Their answers would meet the whole case made by the bill—the equities between all the parties could be settled by a single decree, and the whole case would appear of record. According to the proposition of the plaintiff in error, all these matters of claim and defence are to be tried by engrafting upon the claim issue another, or other wholly independent issues. This is all to be done by parol, and the absurdity of the whole thing is conspicuous in this, that the record shows no trace of all this vitally serious litigation. The lien of the plaintiff's judgment is one thing—that of the vendor another and different thing. The judgment is founded on a contract, and its lien is created by Statute. The plaintiff is a creditor, both before and after judgment. The vendor's lien is an equity, which springs out of the sale, but does not exist by contract. He is the *cestui que trust* of his purchaser. The plaintiff's lien is fixed by a judgment, before he moves against the claimant—the vendor's lien is to be ascertained by a judgment or decree, in the issue which he makes with the purchaser, else he can never sell the land. The judgment is conclusive—it cannot be inquired into. The vendor's lien is assailable, and may be resisted. The principles involved are different. Under the Statute of *Elizabeth*, for example, notice to the claimant that the purchase money was unpaid, is only a badge of fraud. Such notice, when the vendor's lien is to be set up, is, *per se*, conclusive against the claimant's title; and this is the legal proposition which makes this new mode of asserting the vendor's lien, so important in this case. If it were allowed, it is clear, that the claim trial would become inextricably embarrassed; the most important questions that are made before Courts of Justice, would be tried without pleadings and without a record, and the rights of parties would be greatly endangered. Much more might be said in relation to this matter,

We think, that neither the *vendor's lien,* nor any rules or principles of law in relation to it, have any application to this case.

[2.] In opening his charge to the Jury, the presiding Judge said, " that he wished counsel to take notice of his charge, for he supposed the case would be taken up, and if he erred, he could be corrected, *and if the Jury found contrary to evidence, they could be corrected."* The latter part of these remarks—those that relate to the Jury—is assigned for error. We do not think that the remark complained of is ground of error. In making such a remark, either directly to, or in the hearing of, the Jury, we cannot say that any rule of law is violated. But the propriety and expediency of such a remark is not at all questionable. The finding of the facts is, by law, the duty of the Jury; and it is also the privilege of the parties, that they shall find the facts. This obligation, and this privilege, ought not to be interfered with, either directly or indirectly, by the Court which tries the cause, or by this Court. Whilst it is true, that the Court is clothed with power to grant new trials, upon the ground of a finding contrary to evidence, yet this power does not rest upon any right in the Court to try the facts—it does not become thereby a trier of facts; but it is given to the Court, that any flagrant abuse of the trial of the facts, by the Jury, may be corrected. Such abuse is corrected, not by the Court taking upon itself the correction of the errors committed by the Jury, but by staying its judgment, and awarding another trial, before another Jury. The exercise of this power is confined to exceedingly narrow limits—for the obvious reason, that whilst a power to relieve, against a flagrant abuse of the exclusive function of the Jury in the trial of facts, is necessary and proper, yet they are the sole legally authorized tribunal to pass upon the facts. *Trial by Jury,* by the Common Law and by the Constitution of this State, is, of all other rights of the citizen, the most intangibly sacred. To keep it so, is one of the highest obligations of all the officers of the Government, and more especially of judicial officers. I need scarcely say, that *we* have no power whatever over the facts of the case. A writ of error does not lie to this Court, upon the verdict of a Jury. A writ of error will lie upon a rule for a new trial, upon the ground, that the Jury found contrary to the evidence; but in that case, it grows out of alleged error *in law,* in the Court below, in refusing or granting the rule. And one

reason why we cannot approve the remark of the Court, now being considered, is, that without explanation, it left the Jury fairly to infer—taken especially with the preceding remark—that *he supposed the case would be taken up*—that this Court was authorized to review their verdict.    I say, then, that the obligation of the Courts is, to maintain, exclusive and unimpaired, the trial by Jury, not in form, but in fact and in substance.    To fulfil this obligation, trials before Juries ought to be so conducted as to constrain the Jury to know and to feel that the sole, absolute responsibility of trying the facts, is upon them.    They ought, by all the forms of procedure, and by the direct instructions of the Court, to be made to feel, that this responsibility is upon them— that neither the Court below, nor this Court, nor any other power, can share it with them.    Each party, even although each has the right of applying for a new trial, is entitled, in the trial of his cause, to the whole intellect of the Jury, the full sanction of their oath, and the industry, and attention, and conscientiousness which a sense of responsibility is sure to prompt and inspire. Any remarks, therefore, falling from the Court, however unintentional, calculated to weaken this sense of responsibility, is wrong.    The remark made by the Court in this case, was calculated to work this effect.    To tell them, or to say in their hearing, that if they found contrary to evidence, their verdict could be corrected, was to inspire in them a belief that the final responsibility of the verdict was not upon them ; and most men could not prevent the effect, more or less, of such a belief, on their conduct in the jury-box.

[3.] The Judge instructed the Jury, "that fraud was never to be presumed, though it might be proven by circumstances."    To this instruction, the plaintiff excepts.    I cannot see why.    In a Court of Law, fraud cannot be presumed.    There is no doubt about that.    It may be proven by positive testimony.    The Judge affirms nothing against that.    He only goes farther, and says, that although it cannot be presumed without proof, yet it may be proven by circumstances.    We see no error here.

[4.] The presiding Judge farther instructed the Jury, that "to hear reports about an incumbrance, did not amount to sufficient notice in Law ;" and to that charge, the plaintiff has excepted. It will have been seen, that the effort of the plaintiff in execution, in this case, was to set aside the title to the claimant, under the

Statute 13*th Elizabeth.* He was bound, therefore, to prove that the sale, by the defendant in execution, was made to defraud him, a creditor, and that the claimant, and those (the intermediate pur chasers,) under whom he held title, had notice of the fraud. No tice was sought to be brought home to the claimant, by proving that he had been informed that Judge Colquitt, the plaintiff in execution, had some claim upon the land ; and it is no doubt to this testimony that the Court alludes, in this part of his instructions to the Jury. Whether the claimant bought with notice or not, is a fact to be left to the Jury. What facts or circumstances were evidence of notice, was for the Court to determine. He held, that " to hear reports about an incumbrance, did not amount to *sufficient* notice in Law." It is very clear, that to hear a report—to be told that there was an incumbrance on the land—is not *sufficient notice in Law,* of itself, to set aside the claimant's title. *Sugden on Vendors, top p.* 315. Whether to hear a report of an incumbrance, be admissible, even as a fact from which the Jury might infer notice, is altogether questionable. Indeed, I find no authority going that extent. That the claimant heard the report, is a fact which may be susceptible of proof. A *report* is not, however, a fact. Rumor or report does not prove a fact. Proof that one hears that a thing is so—that a fact exists—does not prove the fact—it does not charge the mind with knowledge of the fact. The most dangerous consequences to the rights of property, might be justly apprehended, if they were left to be determined upon rumors, which are proven to have reached the ear of parties. They are but hearsay, and prove nothing, except in certain excepted cases, of which this is not one. The argument in support of this exception in part, was, that the *Judge* failing to specify what was *report,* the effect of the charge was to exclude from the consideration of the Jury, such facts proven, as are legitimate badges of fraud. This inference is not a fair one. The word *report* explains itself : *report about an incumbrance* is itself explicit, and perfectly intelligible. The Jury were, it seems to us, obliged to limit the application of the instruction to the evidence of *reports.* There is no error in this instruction.

[5.] The Court was requested to give to the Jury a certain charge. Whether the request and the legal proposition were presented verbally or in writing, the bill does not disclose. The bill states the rule of law, which was desired to be given in charge

to the Jury, and that the Judge, being requested to charge it, replied, " Well, I charge it." The *manner* of this charge is excepted to. If there were no other ground upon which this cause ought to be remanded, we should be constrained to send it back upon this—because we believe that the manner of this charge is violative of principle. That the actual scene, at the time when this charge was made, was such as to excuse the manner in which it was given, and to divest it, in the view of eye-witnesses, of something of its objectionable character, we can readily imagine. We, however, can view it in no light but that in which the record presents it. It is not necessary to repeat here, what the rule of law was, which was requested to be given in charge to the Jury. Suffice it to say, that the Judge himself recognized it to be a sound principle of law, and also recognized the right of the plaintiff in error to have it presented to the Jury ; and no doubt he considered that he did present it to the Jury. He did charge it for certain purposes. For example, he would, under the circumstances, scarcely be liable to a writ of error in behalf of the plaintiff, for refusing to charge according to the request ; and he would have been liable to a writ of error, at the instance of the other side, for having charged according to the request. To this extent—for these ends—the charge, perhaps, may be considered as sufficient ; but as an *instruction to the Jury*, we consider it, in effect, no charge, and a virtual denial to the plaintiff in error, of his right to have the rule of law, which he considered applicable to his case, and, indeed, which was so considered by the Court, laid before the Jury for their guidance in passing upon the evidence.

The Court is the exclusive judge of the law in civil cases. As the Court may not interfere with the evidence, so the Jury may not interfere with the law. The Jury are bound to obey the law, as given in charge to them by the Court. I lay this down without any qualification. They are bound, according to the organization of our Courts, to apply the evidence, under the law, as administered to them by the Court. They have no right to sit in judgment on the law. Hence, if the Jury find contrary to a correct rule of law, given them in charge, the verdict will be set aside, and a new trial awarded. Nay, I go farther. If an erroneous rule of law be given them, *they must abide it.* The correction of the error in the law is not with them ; it is a power

Colquitt *vs.* Thomas *et al.*

deposited elsewhere. The Court may correct his own errors, by granting a new trial; and if he will not, this Court is organized as the final corrective tribunal. Any want of distinctness between the powers of the Court and the Jury, would be ruinous to the entire system. This is the theory, and never was theory based upon more impregnable principle. And the theory is carried out in this State, with great fidelity, in practice, particularly by the Juries. There are occasional departures. Occasionally, a Jury, or Juries, persist in disregarding the law of a case. But the instances are rare. On the contrary, the Juries expect, desire, and lean upon, the legal instructions of the Court. They wait upon the directions of the Court—they receive the rules of their appropriate action from the lips of the Court. They hang upon the words he utters, with intense interest, and strain to unwonted tension the whole of their faculties, clearly to understand them. As conscientious men, charged with the most eventful responsibilities, and not educated and trained in the law, they could not do otherwise. It is, therefore, the duty of the Court, to charge them as to the law—a duty from which he cannot escape. Not only so; but it is equally and necessarily his duty so to give the law in charge to the Jury, as that they shall understand his instructions. They are learners from him; he is their instructor. For obvious reasons, it has been with the Courts, and it ought ever so to be, a matter of pains-taking, to make their instructions plain and perspicuous. For myself, I know of no duty of the Bench more important than what is usually called the summing up, which embraces a clear summary of the facts, and a lucid statement of the law. And next to a strong comprehension of what the law is, stands, in practical importance, a faculty of presenting it intelligibly to unprofessional minds. If these things be so, then, according to these views, how stands this matter? 1st. Were the Jury plainly and intelligibly instructed, as to the law which the plaintiff asked might be given in charge? 2d. According to the manner in which the charge was given, had the plaintiff the benefit of that rule of law, in the action of the Jury upon his case? They were not instructed at all; there was no presentation whatever to them, of the legal principle; their attention was not called to it; no address was made to them. All that was said, was this: "Well, I charge it;" and this remark was made in response to the re-

quest of counsel, and, we are obliged to believe, made to the counsel. It is not sufficient to reply, that both the request and the response were made in the hearing of the Jury. This reply assumes that the Jury could, and did as well understand the legal rule thus heard, as if they had received it in the form of a clear and solemn presentation, directly from the Court to them. This assumption is wholly without foundation. The presumption is, that they imperfectly heard, and did not, because, in the very nature of the case, they could not, understand it. It is not always the case, that an able Judge even can understand the full effect of a legal proposition, when first presented. He sometimes requires a re-statement—perhaps an argument. It is unreasonable to suppose that an untrained Juryman, in the midst of the stir and excitement of the court-room, can understand and practically appreciate a rule of law, as read or recited to the Court, by the counsel from his desk. His attention, it may be presumed, was not fixed upon it, for the reason, that he expected to be instructed upon it by the Court, in solemn form.

If the Jury did not understand the rule of law which was thus imperfectly charged, it could not, of course, become to them a rule of action in their application of the evidence; and the case stood as though there had been no attempt whatever to charge it. If so, the second interrogatory is answered. The plaintiff had not the benefit of the rule of law which he believed, and which the Court held, was applicable to his case; and for that reason, we hold that the manner in which this charge was given, is error. *Hall vs. Hall,* 6 *Gill. & Johns.* 386. *Selin vs. Snyder,* 11 *S. & R.* 319. 3 *Cranch,* 298. 3 *Blackf.* 433. *Powers vs. McFerron,* 2 *S. & R.* 44. *Smith vs. Thompson, Ib.* 49. *Hamilton vs. Menor, Ib.* 70. *Livingston et al. vs. Maryland Ins. Co.* 7 *Cranch,* 506.

[6.] The next exception is to the admissibility of the evidence of the witness Russel. He swears that he saw the claimant pay a large sum of money to A. H. Harrison, and that he understood from the claimant, A. H. Harrison and Clayton Williams, that the money was in payment for a parcel of land that claimant had bought from A. H. Harrison & Clayton Williams, known as the Pondtown Place, in the County of Campbell, and that the claimant gave to Harrison & Williams five thousand dollars for said land, as he understood from the claimant and Harrison & Wil-

liams. This witness was introduced by the claimant, to support his title, by showing the *bona fides* of the purchase. He bought from Harrison & Williams, who bought from Thomas, the defendant in execution. The testimony goes to show that he paid for the land, and how much he gave for it. The objection is to proof of the *sayings* of Harrison & Williams, and the claimant. The interview between the witness and these parties, was *after* the claimant had bought the land in question, from Harrison & Williams. It occurred in the summer of 1845, and the claimant bought in May, 1845. The sayings of these parties are not admissible as part of the *res gestæ*, at the sale of the lands to the claimant, because they were not contemporaneous with the transaction. The sayings of the *claimant* are not admissible, in support of his title, unless they are part of the *res gestæ*. Here they are not. Nor are the sayings of his vendors, in support of his title, uttered after they had sold and parted with all their interest in the land, admissible. What the witness *understood*, therefore, at that time, from these parties, is, in our judgment, incompetent testimony, and ought to have been rejected. So far as the testimony goes to prove facts—the payment of the money, for example—it is competent.

As to the testimony of L. B. Watts, we think the Court was right in rejecting it. It was afterwards read by consent, at the suggestion of the Court—he expressing doubt as to the correctness of his decision, and saying, at the same time, in the hearing of the Jury, *that it did not amount to much.* This remark is made the ground of an assignment. Without laying too much stress upon every casual remark that may fall from the Court, in communicating with counsel in the progress of a cause, we are of opinion, that whilst this remark, thus made, is not ground for error, it might as well have been omitted.

As before stated, Judge Colquitt having reduced his claim against his vendee, Thomas, for the purchase money of the Pondtown lands, to judgment, was seeking to subject them. Thomas, pending the suit against him, had sold the lands to a company, known in this record as Harrison & Williams, who sold, pending that suit, to the claimant, Nathaniel Harrison. Colquitt's judgment being younger than the deed to the claimant, and, also, than the deed to the claimant's vendors, Harrison & Williams, his effort was to show, that the original sale from the defendant in exe-

cution, to Harrison & Williams, was void ; because made to hinder, delay and defraud him, as a creditor, under the Statute 13 *Elizabeth*, and that the purchasers from Thomas had notice of the fraudulent intention—whilst the claimant, on his part, sought the protection of the exception in that Statute, in favor of *bona fide* purchasers, for value, without notice. *His* effort, therefore, was to prove the *bona fides* of his purchase, and that he had no notice of the fraud. Such was the principal grounds of contest in this cause, and a large volume of testimony was introduced, directed to these points. The Court gave to the Jury several instructions relative to the question of notice, which are excepted to. In reviewing the instructions of the Court upon this head, in justice to the Court, I remark, that an effort seems to have been made by the counsel for the plaintiff, to secure to him the benefit of the rule, as applicable to a contest between the vendor, seeking to set up his lien, and a purchaser from his vendee—whilst it is very obvious, that the purpose of the Court was to exclude that rule from the case, and to hold the parties to the rule of notice, under the Statute of 13 *Elizabeth.*

Examining into these instructions with diligence, we are satisfied, that in more than one instance, the charge of the Court is susceptible of such a construction, as denies to the plaintiff the benefit of certain testimony which, under the law, he was entitled to. Whether, in fact, the Jury did allow the full effect of this testimony, is what we cannot determine; but as their verdict is against the plaintiff, we have a right to presume that they did not. I do not mean to say that, in my opinion, the plaintiff ought to have recovered—I express no opinion about that—I only mean to say, that inasmuch as the instructions of the Court are susceptible of a meaning adverse to the rights of the plaintiff, and inasmuch as the Jury found against him, it is a fair inference that they understood them in that adverse meaning.

[7.] The plaintiff was bound to prove in this case—

1. That the sale, by Thomas, was fraudulent; that is, that it was made to *hinder and defeat* his debt. He was bound to prove a fraud, *in fact.* To prove this, he was entitled to give in evidence certain facts—as the pendency of his suit at the time of the conveyance—possession retained by Thomas, and other facts of like character, which the law recognizes as *marks* or *badges* of

fraud. *See* 2 *Kelly*, 1. From these facts, the Jury are left to ascertain the *bona fides*, or the *mala fides* of the sale.

[8.] 2. He was bound to prove that Harrison & Williams and the claimant, both had notice of the fraudulent intention of Thomas, in his sale to Harrison & Williams.

[9.] I say *both*, because the rule is, that one who buys from a fraudulent grantee, *bona fide*, and *without notice*, will be protected. So, also, if one buys from an *innocent* grantee, *with* notice, he will equally be protected; that is to say, if the claimant bought from Harrison & Williams, *without notice* of the fraud, his title will be good against Colquitt's judgment, although they bought from Thomas, *with notice*. So, also, if the claimant bought *with notice*, and they bought *without notice*, his title will be good—so that both the claimant and his vendors must be charged with notice. This is the rule, both under the 27 and 13 *Elizabeth*. The rule has been held different in New York, and, also, in Connecticut and North Carolina, under the 13 *Elizabeth*. In *Roberts vs. Anderson*, Chancellor *Kent* held, approving the decision of the Supreme Court of Connecticut, in *Preston vs. Crofut*, (1 *Conn. R.* 527, *note*,) that inasmuch as the *Stat.* 13 *Eliz.* made a conveyance to defeat creditors *utterly void*, a purchaser from the debtor, buying with notice, acquired no title, and could convey none, even to a purchaser without notice. It seems to have been so held, also, in North Carolina. See *Hoke vs. Henderson*, 3 *Dev.* 12 *to* 16. In New York the Chancellor has been overruled, and unless in Connecticut and North Carolina, no distinction now obtains between the *Stat.* 27 and the *Stat.* 13 *Elizabeth*. The rule, under both Statutes, by the preponderance of authority, is as I first above stated it to be. 3 *Johns. Ch. R.* 372. 3 *Dev.* 12 *to* 16. 1 *Conn.* 527, *note*. 18 *Johns. R.* 515. 9 *Paige*, 132. 2 *Mason*, 252. 1 *Sumner*, 507. 2 *Pick.* 184. 12 *Idem*, 307. 3 *Metclf*. 332. 8 *Idem*, 411. 8 *Watts*, 489. 3 *Penn.* 160. 18 *Maine*, 391. 2 *N. Hamp.* 402. 7 *Dana*, 506. 5 *Missouri*, 296. *Note to Hopkirk vs. Randolph*, 2 *Brock.* 152, '3. 3 *Kelly*, 448.

To prove the fraudulent intent of Thomas, the pendency of the suits against him is a competent badge, and in this case ought to have been submitted, with its full effect as such, to the Jury. The fraud, on the part of Thomas, was a preliminary fact, to be established—notice to the claimant and his vendors, of the fraud, could not be established, unless the fraud itself was proven. The *pen-*

*dency of the suits,* was, also, a fact to be left to the Jury, to show notice to them—it was an *indicium,* from which notice might be inferred—for they bought whilst the suits were pending. Of itself, it is not notice; and I apprehend that the pendency of the suit, in favor of the plaintiff, was legitimate evidence, to the extent stated, to show notice whether the record of the case pending, showed the consideration for whieh the notes sued on were given or not. The consideration really has nothing to do with the matter. The facts to be arrived at in this case were, was the plaintiff *a creditor* of Thomas—no matter upon what consideration—was the conveyance by Thomas made to defeat him as a *creditor,* and had the claimant and his vendors notice of a fraud against the plaintiff, as a creditor ? In an attempt to enforce the vendor's lien, it would not, of course, be enough for a vendor to exhibit the notes of the vendee. He would be held to go farther, and prove the sale of the land, and if the notes became material testimony at all, I apprehend they would avail nothing, unless proven to be given for the land ; but in this case, let it be remembered, that we have nothing to do with the vendor's lien. Now, what did the Court charge as to the pendency of the suits ? He charged, " that the pendency of the suits did not operate as notice, either positive or constructive, for the notes did not express the consideration for which they were given; and although the plea did set forth that fact, yet the plea was not verified, and, if taken at all, would have to be taken together, and it set forth a partial failure of consideration." In the view I have presented of the *lis pendens,* as a badge of fraud, and as evidence of notice to the purchasers, there was error in this charge. It is true, that the pendency of the suits was not notice, positive or constructive; that is, not such notice, in law, as would be conclusive upon the claimant. In that construction the Court was right; but it was competent evidence, as a fact or circumstance, from which the Jury might infer notice. It was the right of the plaintiff, that the Jury should be allowed to consider of it. Were they so instructed as to lead them to believe that they were at liberty to consider the pendency of the suits as evidence for any purpose ? We think they were not. It being in reference to a vital point in the case, the charge ought to have been more explicit. We think the Jury may have construed this charge, as withdrawing from their consideration, altogether, the fact that the suits were pend-

ing at the time when the claimant and his vendors purchased. They ought to have been told, that the pendency of the suits, although not conclusive in law, or in fact, as to notice, yet was a fact which they were at liberty to consider, in determining, in connection with the other evidence in the case, whether they had notice or not; and this, wholly irrespective of the reasons given by the Court, as to the consideration of the notes sued on, and the plea.

[10.] Farther, the plaintiff's counsel requested the Court to instruct the Jury, " That if they believed, first, that the deed to Harrison & Williams, made by the defendant in *fi. fa.* was fraudulent as to creditors, and that Nathaniel Harrison, the claimant, knew of the indebtedness of the defendant, Thomas, to the plaintiff for the purchase money of the fractions, and of Thomas' insolvency, and the pendency of the suits, at any time before he paid the purchase money and received a title, that a deed taken after such notice would not defeat the incumbrance, and that such deed would be fraudulent in law." The Court refused to charge as thus requested, and we think correctly.

In this case, a deed taken after knowledge of the plaintiff's incumbrance, of Thomas' insolvency, and of the pendency of the suit—such knowledge being before the payment of the purchase money—would not, necessarily, defeat the incumbrance. *That* part of the instruction asked is true; yet it is not true that the deed would be fraudulent in law. I repeat, that the fraud to be proven, is a fraud in fact; and the notice to be charged upon the purchasers, is notice of this fraud in fact. The fraud being proven, and notice of it carried home to the purchasers, they become parties to the fraud, and the law adjudges, then, that their title is not good. The fact of fraud, and the fact of notice, are to be submitted to the Jury. Hence, if the knowledge of the incumbrance, of Thomas' insolvency, and of the pendency of the suits, be proven, those facts do not, as of legal necessity, annul the deed. I am aware, that the desired instruction assumes that this sale was fraudulent. Let that be so; still, knowledge of these facts, to wit: Colquitt's debt, Thomas' insolvency, and the pendency of the suits, does not, necessarily, make the deed to claimant void. Whether void or not, is the issue upon the question of notice, and these facts are submitted to the Jury upon that issue. Upon the requisition in the request, that upon knowledge of these

facts the claimant's deed be charged to be fraudulent, the Court is invoked to determine the issue as to the notice. He did not err in not responding favorably to the invocation. He, however, in response, charged, " that if any considerable part of the purchase money had been paid, and the contract of purchase complete, before notice, that the claimant was not compelled to stop, but had a right to go on and take a deed, which deed would, *in no wise, be affected by the notice in this suit,* the plaintiff averring that he did not rely upon his lien in Equity." The lien in Equity being out of the question, it remains to inquire, whether there be any error in this instruction? When a purchaser goes into Equity, for relief against a prior incumbrance, upon the ground that he is a *bona fide* purchaser, without notice, he will not be relieved, if he has notice before he pays all the purchase money, although he has paid a part. The rule in such a case goes thus far, to wit: notice before actual payment of all the purchase money, although it be secured, and the conveyance actually executed, or before the execution of the conveyance, notwithstanding the money be actually paid, is equivalent to notice before the contract. 2 *Sugden on Vendors, top p.* 312. 3 *P. Wms.* 387. 2 *Atk.* 630. 1 *Johns. Ch. R.* 288. 1 *Munf.* 38. 7 *Johns. Ch. R.* 65.

I do not mean to say, that this rule applies in this case. In the case put by the Court, he says, that the purchaser may go on and take his deed. True, he may; but he proceeds to say, that in such a case, notice *would in no wise affect the deed;* that is, in a case where a considerable part of the purchase money is paid— the contract of purchase being complete—the purchaser then receiving notice, before the balance of the purchase money is paid, and before the deed is taken, the deed will in no wise be affected by the notice. We do not agree with the Court in this idea. The purchaser may go on, in such a case, to take his deed, and as against a prior incumbrance, with notice, it would not avail him in Equity ; *and here,* we think, he takes it at the peril of its being set aside *for notice of the fraud.* We mean to say, that in the case put by the Court, at Law, as here, the facts going to show notice of the fraud, may be submitted to the Jury, and to this extent and no farther, we think this charge wrong.

[11.] In relation to the statements of Clayton Williams, upon a close inspection of the record, the only point determined by the Court was, that his statements could not be given in evidence to

prove his own agency—he being a competent witness to prove his agency. This ruling was at the request of the claimant. To this proposition the plaintiff does not object. The objection is to this remark of the Court, recited in the bill, made to the Jury, to wit: " testimony can be legally admitted for one purpose, and when so admitted, cannot be made evidence for a different purpose, and the sayings of Clayton Williams, made after his actings in that capacity, while purchasing, cannot be admitted to prove his agency, he being a good witness for that purpose." We find no error in the ruling or the remark.

Let the judgment be reversed.