SMITH vs. WELLBORN.

[Hall, J., being disqualified, Judge Hammond, of the Atlanta Circuit, presided in his stead.]

1. The verdict was not contrary to law or evidence.
(a.) Facts sufficient to show that conveyance was made to hinder and defeat creditors, and that the holder thereunder took with notice.
2. It was right to admit in evidence the record of the garnishment suit to show its beginning, its duration and its termination, and thus to fix notice upon the claimant.
3. Inasmuch as the fact that the defendant in execution had stripped himself of all his property by conveying it to his two sons, in order to keep his creditors from reaching it, went to the gist of the question of fraud in the claim, it was competent to show that the other son besides the claimant had received part of the land from his father, and to show the circumstances attending the transactions of the father with him, as well as with the claimant; and the sayings of the other son to the claimant and in his hearing were admissible to show the *res gestæ* of their trading, as well to throw ·

light upon the scheme of the father as to affect the claimant with notice, when his brother informed him about it or talked about it in his hearing.

4. There was no error in allowing counsel for the creditor (the defendant in the common law suit), as well as counsel for the plaintiff, to participate in examining witnesses in the claim case arising under the judgment against the garnishee.

5. The advice of counsel to his client in regard to the steps to take in the case is immaterial, and it was not error to exclude his testimony thereon.

(a.) The remarks alleged to have been made by counsel to the jury as to such advice, and on account of which it was claimed to have been admissible, were not certified by the presiding judge.

6. When the claimant admits the possession of the property to have been in the defendant, and thereby obtains the substantial right to conclude the argument—especially in a case involving issues of fraud—this is a solemn admission *in judicio*, and he cannot afterwards disprove it. He may explain, but cannot deny such possession.

7. Where the court had charged fully the law touching the fraudulent intent of the defendant in conveying away his property, and then proceeded to submit the issue of the existence of notice thereof to the claimant, or of such knowledge as should put him on inquiry and suspicion thereof, it was not error to use the expression, "So you see it is carried down to that."

8. If a defendant in execution had, pending litigation, sold his property to prevent those suing him from making their claim out of him, the sale would be void as to him; and if the purchaser, at the time he bought, had reasonable grounds to suspect that such was his object, then the sale would be void also as to such purchaser.

9. The circumstances of this case authorized the court to submit to the jury the issue whether the whole affair was real and honest or a mere sham; and to say to them that "if the claimant did not pay any value for it (the land), or if it was a sham—he paid the money, and the old man paid it back, then it is no trade." There was no error in this, when taken in connection with the context, where the issues of fraud or good faith and of notice were fully submitted.

10. The charge, as a whole, was fair and lucid. If, in summing up the evidence, the circumstances showing fraudulent intent in the defendant and knowledge of it in the claimant were more numerous than those showing honesty of purpose in the defendant and ignorance of any bad intent by the claimant, the fault was not in the charge, but in the facts.

December 1, 1885.

Fraud. Debtor and Creditor. Title. Notice. Evidence. Parent and Child. Garnishment. Attorney and Client. Claims. Admissions. Charge of Court. Before Judge SIMMONS. Houston Superior Court. April Term, 1885.

To the report contained in the decision, it is necessary only to add the grounds of the motion for a new trial, which were as follows:

(1), (2), (3.) Because the verdict was contrary to law and evidence.

(4.) Because the court erred in allowing testimony for plaintiff of a suit between the plaintiff and defendant in Houston superior court, and the introduction of the records in said suit, over the objection of claimant's counsel, claimant not being a party to said suit and there being no evidence to show that he had notice of it.

(5.) Because the court erred in compelling the claimant, over the objection of counsel, to testify as to the sayings of J. A. Smith in reference to some land purchased by the latter from defendant in *fi. fa.*, the same not being in any-wise involved in the case on trial, and J. A. Smith being a competent witness and in attendance upon the court.

(6.) Because the court erred in allowing the witness, W. H. Smith, to be cross-examined by both Mr. Harris and Mr. Duncan, one representing Wellborn and one representing Burgay, over the objection of counsel.

(7.) Because of the following ruling: The defendant in *fi. fa.* was subpœnaed during the trial by the plaintiff in *fi. fa.*, and on account of illness and infirmity was sent across the street to a hotel, by order of the court. The witness's son, who was a physician, pronounced him too ill to be examined without danger of fatal results. Counsel for the plaintiff in *fi. fa.* announced before the court and jury that he desired the witness's presence to show that he sold the land for the purpose of avoiding the payment of this debt, under the advice of Mr. Patterson,

v 75-51

an attorney.   The court refused to allow Patterson to tes-
tify what advice he had given Smith, or that he had noti-
fied counsel for the plaintiff of the witness's sickness some
ten days before the trial, and that if they desired his testi-
mony, they could take his interrogatories. (It was also com-
plained of that the court permitted counsel for the plain-
tiff to argue on the subject to the jury. but the court re-
fused so to certify.)

(8.) Because the court erred in permitting counsel for
plaintiff to cross-examine J. A. Smith with reference to his
purchase of land other than that in dispute, and as to
various sources from which he obtained money to pay for
it.—The court overruled the objection, saying: "Their
theory of this case is, that there was a general scheme on
the part of the old gentleman to delay his creditors, and
it would be relevant that way; not as having a particular
bearing upon this case, but to show a general scheme."

(9.) Because the court erred in charging the jury : " In
this case, the claimant, W. H. Smith, admitted the posses-
sion of George W. Smith.   The legal effect of that was that
he admitted the right of George W. Smith to be in posses-
sion, and he assumes the burden or *onus* to explain that
to the jury, and how it was that he was there and remained
there all the time, and yet it was his property.   The *onus*
was on him when he assumed the burden, and he must
explain it to your satisfaction."   [Note by the court—" Be-
fore the evidence was introduced to the jury, Mr. Patter-
son, of counsel for claimant, stated that he would admit
the possession of the defendant in *fi. fa.*, but would reserve
the right to explain or disprove it; and on this statement,
I awarded him the conclusion in the argument."]

(10.) Because the court erred in charging the jury:
"Mr. W. H. Smith claims that he bought that property
*bona fide* from his father for a valuable consideration.
The plaintiff in *fi. fa.*, Mr. Wellborn, replies to that and
says 'that may be true that you bought that property from
your father, and that you have paid him the money for it,

but your father sold it to you for the purpose of hindering and delaying or defrauding his creditors, and that you either had notice of it or had reasonable grounds to suspect that that was the old man's intention.' Smith, the claimant, replies to that, that he did not have notice or reasonable grounds to suspect, but that he bought it *bona fide* and fairly; so you see it is carried down to that."

(11.) Because the court erred in charging the jury : " If you believe from the evidence that G. W. Smith sold this land to W. H. Smith, and that it was his purpose to keep Wellborn and Burgay from getting what they claimed out of him, and he sold it in order to transfer it, so that they could not levy on it, or to hinder them in getting it, then the sale would be void as to him ; and if you believe further that, at the time that was done, W. H. Smith had reasonable grounds to suspect that that was the old man's intention, then the sale is void, although W. H. Smith has paid ts full value.   That is the case for you to try."

(12.) Because the court erred in charging the jury : " If the claimant did not pay any money for it, or it was a sham, he paid the money and the old man paid it back, then it was no trade."

(13.) Because the charge of the court, taken as a whole, was error, in that it did not place claimant's case fairly and plainly before the jury ; because, while it called to the attention of the jury, with great particularity and effectiveness, every fact in evidence which could benefit the plaintiff, it was silent as to any of the facts in evidence which would benefit the claimant.

The motion for a new trial was overruled, and the claimant excepted.

R. W. Patterson, for plaintiff in error.

Hill & Harris; Duncan & Miller, for defendant.

Jackson, Chief Justice.

Wellborn obtained a judgment against Burgay, and on

garnishment of G. W. Smith, recovered against him also as indebted to Burgay. Execution, issued upon the judgment against the garnishee, Smith, was levied upon certain land as the property of G. W. Smith, the said garnishee, and was claimed by W. H. Smith, the son of G. W. On issue joined on this claim, the land was found subject, and a new trial having been denied the claimant, he excepted, and assigns error here on the grounds specified in the motion for a new trial.

1. The verdict is not contrary to the evidence, or to the law or equity of the case. The defendant in execution was indebted to Burgay for a piece of land, and intended to pay it with cotton deposited in a warehouse in Macon; but the cotton was burnt up therein, and the dispute between the defendant in execution and Burgay was, who shall lose the cotton? The defendant had insured it and recovered something thereon, and offered by tender to settle by paying over to Burgay the net proceeds after paying expenses, including counsel fees, etc. This Burgay refused; and thereupon it is in evidence that the defendant said Burgay should recover nothing. Accordingly, on the Saturday before the session of the court which rendered the judgment against him as garnishee, G. W. Smith, having long before given a part of his lands to his wife, denuded himself of all the remainder of his estate to his two sons, one of whom is the claimant here, and conveyed to them, in separate deeds to separate parts of the land, all the rest of the land on that day, and both these deeds were recorded on the same day by the special and anxious request of those offering them for record. The payments for the lands by the sons were proved only by themselves, though there were witnesses to the deeds, and it was in testimony by the claimant that some of his payments could be proved by disinterested witnesses in another county; neither the witnesses to the deeds nor those in the other county were sworn; and in the claim case now before us, the claimant credited the note his father held upon him

with one thousand dollars at one time, five hundred at another, and the balance in cotton,—all during the same fall, and all in his own handwriting; he having given his note therefor when the deed was made, or rather a few days before the deed was made,—thus showing great particularity in making a fair showing, particularly in putting on it, after or at the time he took it up, the last cotton payment on it, extinguishing it. The suit between the plaintiff in execution and the garnishee had lasted several terms of the court, and these deeds were made just before the trial was had and the judgment was rendered. In addition to all this, there was no change of possession, but the same tenant remained, and the family among them collected the rents. Under these circumstances, we think that the jury might well conclude that the intention of the defendant in execution was to carry out his remark when the offer about the insurance money was declined, and to so fix up his property that Burgay should get none of it for his land, which the defendant in garnishment had bought from him, and that Wellborn, who had garnished him, should also get nothing out of him to help pay Burgay's debt to him; and that, passing by the dispute or suspicion about the real payment of the money by the claimant to his father, the jury might very well also conclude, from the relationship of father and son, from his deed, bearing the same date with his brother's and recorded the same day, and from his great caution in crediting the note, especially with the last credit, and preserving it with these entries on it, not one of them made by his father, but all by himself, that the son knew all about it, and was engaged in helping his father hinder and delay, and if possible defeat the collection of this debt by Burgay, and by Wellborn, the plaintiff in execution, who garnished him to pay what Burgay owed him, Wellborn. So that the verdict is supported by abundant evidence, and is neither illegal nor inequitable. Wait on Fraud, Con., §233 ; Bump, pp. 34,

37; 2 Kelly, 1; 57 *Ga.*, 235; 51 *Id.*, 537; Wait on Fraud, Con., §§241, 228; 61 *Ga.*, 629; 68 *Id.*, 567.

2. It was right to admit in evidence the record of the garnishment suit to show its beginning, its duration and its termination, and thus to fix notice upon the claimant.

3. Inasmuch as the fact that the defendant in execution had stripped himself of all his property to his two sons, in order to keep his creditors from getting at it, went to the very vitals of the fraud in this claim, it was perfectly competent to show that J. A. Smith, the other son, had got part of the land from his father, and to show all the circumstances attending the transactions of the father with him as well as with the claimant; and the sayings of J. A. Smith to the claimant and in his hearing were admissible, to show his and his father's dealings as part and parcel of those transactions, the *res gestæ* of their trading, in order as well to throw light upon the scheme of the father as to affect the claimant with notice, when his brother informed him about it, or talked about it in his hearing.

4. There was no error in allowing counsel for Burgay, as well as the counsel for Wellborn, to participate in examining witnesses, as Burgay was as much interested in finding the property subject as Wellborn was.

5. The advice of counsel to client in regard to the steps to take in the case is immaterial, and it was not error to exclude his testimony thereon. In respect to what counsel said to the jury on the other side touching that advice, to rebut which the evidence was pressed for admission by claimant's counsel, the court declined to certify to it; and therefore there was no error in his overruling the seventh ground for a new trial

6. Where the claimant admits the possession of the defendant in execution of the land in dispute, he cannot disprove that admission, because it is a solemn admission *in judicio*, and secures the great right to conclude the argu-

ment, especially an important advantage in a case involving issues of fraud or no fraud.

If, when the admission is made, the right is reserved to disprove the admission, the reservation amounts to nothing. The admission with such reservation should not have been permitted, or received and acted upon by the court; but if acted upon, and the concluding argument is allowed upon the strength of it, and counsel reaps the fruit of a naked admission, he must take the consequences; and while he may explain, if he can, the possession, he cannot deny or controvert that which yielded the fruit of concluding the argument, thus going back on his own admission. He should have known the consequences flowing from his admission, and cannot be heard to complain that the court charged that he could not controvert his own fruit-bearing admission. Though not exactly parallel, the point is covered by 68th *Ga.*, 560, and *Royce & Co. et al. vs. Gazan*, decided at this term.

7. Where the court has put the law touching the fraudulent intent of the defendant before the jury fully and clearly, and then goes on to put the issue of notice or not thereof in the claimant, or such knowledge as should put him on inquiry and suspicion thereof, it is not error to use the expression, " So you see it is carried down to that." There is no expression of opinion in this that the fraud of the father has been proved, because the jury had been charged on that phase of the case before, and the issue thereon had been fairly put, and the judge was then engaged in warning the jury that, though the defendant contemplated hindering and delaying his creditors, the point now before them is reached—the other issue has been carried down to this point—that it may be true the father sold to hinder and delay, yet did the son know it, or had he reasonable grounds to suspect it, remained a vital issue. Code, §1952, sub-sec. 2.

8. From what we have already said, it follows that we approve the charge of the court to this effect, that if a defend--

ant in execution had, pending litigation, sold his property to prevent those suing him from making their claim out of him, the sale would be void as to him, and if the purchaser, at the time he bought, had reasonable grounds to suspect that such was his object, then the sale would be void also in respect to that purchaser.   Code, §1952, subsec. 2.

9. The circumstances surrounding this transaction of this debtor, pending this litigation against him, with two of his own sons, whereby he stripped himself of all his land and turned it over to them, and in respect to what this claimant got, the fact that he made no satisfactory explanation of the possession, which he admitted to remain in his father after the sale, coupled with the fact that no person outside the family was called to prove the payment of the money, and the fact that what the father did with the money was not satisfactorily explained, it being said by one of the sons to have gone into improvement of the wife's property, testified to by no one else, and to have paid some debts, without showing by any single one disinterested person that it or part of it was paid to him, and the prompt record of the two deeds, and the singular particularity of the credits on the father's note by the son, these facts and circumstances, in view of the subtle nature of fraud, are sufficient, in our judgment, to have authorized the court to put before the jury the issue whether the whole affair was real and honest or a mere sham, and to say to them that "if the claimant did not pay any value for it, or it was a sham, he paid the money and the old man paid it back, then it is no trade."

By reading the charge before this issue was thus put, it appears quite clear that the judge was right, directing, as he did, the jury to scan the evidence and see what means claimant had to make the trade and pay the money, and to look to all the circumstances of the case bearing on the alleged trade as genuine or sham, and immediately afterwards adding, " but if he made the trade in good faith and

did not have any notice of the old man's intentions (if he did have that intention), and had no reasonable grounds to suspect that such was his intention, and it was a *bona fide* trade on his part, then it is as good a trade as if made between you, and you will find the property not subject." And then the judge explains what he means by the defendant's intention, at the request of claimant's counsel, and says to the jury what he said before in regard to reasonable grounds to suspect such intention in the father, that they would be essential to a verdict against the son. The judge was particular to give the issue in the alternative, and to express no opinion on the facts himself.

10. Taking the charge altogether, it is as fair as it is lucid and full, and the law was impartially given. If, in summing up the evidence, the circumstances showing fraudulent intent in defendant, and knowledge of it in the claimant, were much more numerous than those showing honesty of purpose in the defendant and ignorance of any bad intent in his father by the claimant, the fault is not in the charge, but in the facts; for the one were quite meager, while the badges pointing to the other covered the whole body of the case.

Judgment affirmed.

Cited for plaintiff in error, Code, §§3770, 3756, 3798, 3739, 1952, (2); 8 *Ga.*, 49; 29 *Id.*, 418; 32 *Id.*, 488; 59 *Id.*, 39, 71; 33 *Id.*, 733; 30 *Id.*, 572; 58 *Id.*, 450; 41 *Id.*, 198–9; 38 *Id.*, 50; 39 *Id.*, 599; 30 *Id.*, 133.

For defendant in error, Wait on Fraud. Con., 233, 231, 241, 228, 281, 282; Bump on Fraud. Con., pp. 34, 37, 30, 42, 56, 49, 202; 2 Kelly, 1; 8 *Ga.*, 274; 57 *Id.*, 236; 51 *Id.*, 537; 2 Kelly, 12; 10 *Ga.*, 242; 57 *Id.*, 355; 51 *Id.*, 18; 61 *Id.*, 629; 68 *Id.*, 567; 39 N. Y., 70; 8 *Ga.*, 274; 26 Tex., 560; 2 Kelly, 15; Code, §1952; 57 *Ga.*, 235; 69 *Id.*, 82; 67 *Id.*, 154, 707; 71 *Id.*, 815; Code, §1945.